## JONES *v.* STATE

No. 42744          December 20, 1963          158 So. 2d 730

*Corban & Corban,* Fayette; *Laub, Adams, Forman & Truly,* Natchez, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

KYLE, J.

The appellant, Sam Jones, was indicted by the grand jury at the November 1962 Term of the Circuit Court of Adams County, for the crime of manslaughter in the felonious killing of Barbara Ann Moore by culpable negligence. The case was transferred from the circuit court to the county court, where the appellant was tried and found guilty as charged and was sentenced to imprisonment in the state penitentiary for a term of three years.

The record shows that on November 8, 1962, between 5:30 and 6:00 P.M. Mrs. Barbara Ann Moore, 20 years of age, was killed in an automobile accident in the northern outskirts of the Town of Washington, in Adams County, as she was driving northwardly along U. S. Highway No. 61 toward her home. The highway running northwardly from Washington ran down grade

for a distance of several hundred feet. The four-lane pavement came to an end a short distance above the point where the accident occurred, and the highway thereafter was a two-lane paved highway which curved to the left as it descended gradually to the foot of the hill and continued northwardly toward Fayette. The accident occurred at a point between the end of the four-lane pavement and the bridge over St. Catherine's creek.

Mason R. Seale and Robert Palmertree, two highway patrolmen who were on duty in the Adams County area at the time the accident occurred, testified that they arrived at the scene of the accident a few minutes after the accident occurred. They found that the cars involved in the accident were a 1954 Buick which was being driven by Mrs. Moore, and a 1952 Ford which was being driven by the defendant Sam Jones. No one was in the car with Mrs. Moore at the time of the accident, and Mrs. Moore was dead at the time the officers arrived. The front end of the Buick was across the left lane of travel going north and was headed toward the west right of way embankment. The 1952 Ford, which was proceeding southwardly toward Washington at the time of the accident, had run into the right side of the Buick, and lacked only about 1½ feet of going completely through the Buick. Both vehicles were in the southbound travel lane when the officers arrived at the scene of the accident. The damage to the Ford was at the front end of the car. The damage to the Buick was in the right side at the middle door post. There were no skidmarks of any kind from the Buick. There were tracks, but no skidmarks, coming out of the left travel lane of the Ford and cutting back into the right lane.

The patrolmen testified that, when they arrived at the scene of the accident, the defendant and a boy named Horace Beverly were seated in the 1952 Ford, which had run into the right side of the Buick. The defendant

told the officers that he was driving the car at the time of the accident. There was bleeding in his face from a cut on the chin and the officers smelled alcohol on his breath. The defendant was very uncooperative when the officers proposed to carry him to the hospital in the ambulance, and said he was going home. But the officers finally got him in an ambulance and sent him to the Jefferson Davis Memorial Hospital. The defendant refused to submit to a medical examination, and was later transferred to the Charity Hospital at Natchez, where he was given a medical examination, and the doctors found that he had a broken jawbone. The patrolmen testified that the defendant was definitely under the influence of intoxicating liquor when they questioned him at the scene of the accident and when they saw him again at the hospital.

Charles Flowers, deputy sheriff, testified that he went to the scene of the accident five or ten minutes after he was notified of the accident. Flowers stated that, when he arrived at the scene of the accident, the Buick automobile was sitting across the right lane of travel from Fayette southwardly. The Ford was headed straight into the side of the Buick. Flowers did not see the defendant at the scene of the accident, but he saw him later at the Jefferson Davis Hospital. The defendant appeared to have been drinking. Flowers could smell alcohol on his breath; and one of the hospital attendants told him that the defendant had refused medical treatment at the hospital. The ambulance was still at the hospital, and Flowers carried the defendant to the Charity Hospital. Flowers identified pictures of the Buick automobile and the Ford automobile which were taken the day after the collision occurred. The front end of the Ford automobile appeared to have been completely demolished. Flowers testified that he examined the Ford automobile the morning after the wreck, and he found a one-half pint bottle of whiskey

under the right front seat. The bottle was about three-fourths full of whiskey. He also found an empty beer can on the right side of the automobile.

Dr. William Edward Godfrey II, testified that he saw the defendant in the emergency room at the Jefferson Davis Memorial Hospital, and he seemed to be in fairly rational condition; but there was blood on his face, and he appeared to have a broken jaw. The doctor told the defendant that he needed treatment. The defendant's reply was, that he did not have a broken jaw and he did not want to be treated. The doctor then told the deputy sheriff that the defendant had an injury and needed treatment and should be taken to the Charity Hospital. The doctor testified that he smelled alcohol on the defendant's breath; but he could not say definitely whether the defendant was drunk or still dazed as a result of the wreck.

William Bryant Harper, who lived at Cranfield on Highway 84 in Adams County, testified that he was employed by Gilchrist Tractor Company and was engaged in hauling heavy equipment; and on the night of November 8, 1962, he was driving southwardly on U. S. Highway No. 61, and a 1952 Ford automobile, which was later identified at the scene of the wreck as the defendant's car, passed him at a point on Highway No. 61 about three quarters of a mile north of the place where the wreck occurred. Harper stated that he was driving his truck at a rate of speed of approximately 45 miles an hour when the automobile overtook him and passed him. Over the objection of the defendant's attorney Harper testified that the defendant's car was traveling at a rate of speed of 80 miles an hour when it passed him. Harper stated that after the car passed him he stopped his truck.and tightened the chains which held his load of heavy equipment in place on the truck, and then proceeded southwardly along the highway toward Washington; and that four or five minutes elapsed

between the time the car passed him and the time he arrived at the scene of the accident. Harper stated that he did not see the 1952 automobile again after it passed him about three quarters of a mile north of the point on the highway where the collision occurred until he got to the scene of the accident, because there was a curve in the highway.

Levine Floyd Campbell testified that he saw the defendant at Cupit's Store in the Town of Fayette during the late afternoon of the day the accident occurred; that the defendant had a half pint of wine in his hand; and he saw him take a drink, about half of the contents of the bottle. The defendant also bought another pint of wine and took it with him when he left the store.

The defendant, Sam Jones, testified that he was 23 years of age and lived at Fayette, Mississippi; that he left Fayette to drive to Natchez between 4:30 and 5:00 P. M. on November 8. Horace Beverly was in the car with him. He was driving his Ford automobile at a rate of speed of 55 to 65 miles an hour. He stopped at Shorty's Place, just across the county line, and bought a half pint of whiskey, and he and Beverly each took one drink out of the 1/2 pint bottle. He and Beverly remained at Shorty's Place about 5 minutes, and then came on down toward Washington. The defendant stated that he did not remember passing Mr. W. B. Harper on the highway. The defendant stated that, when he first saw the Buick automobile, he was only 25 or 30 feet from it. He was on his right side of the highway. The Buick was headed across the highway. It turned right in front of his car. He hit his brakes, but he didn't check his speed in time. ''The car was across the road and I couldn't stop and I just hit it.'' The defendant stated that the Buick turned into the right lane ''coming south'', in which he was driving; and after the cars hit he did not remember anything that happened. He did not remember going to the hospital in

Natchez. He was later examined and treated by Dr. Blackman in Fayette. He had a broken jaw and two cuts and one large bump on the head, and he was in Cane's Hospital at Vicksburg for a period of ten days. On cross-examination, the defendant stated that he never got out of the right lane of travel when he came down the hill and crossed the bridge over St. Catherine's Creek; that he was driving about 60 miles per hour as he went up the hill toward Washington; and he did not have time to decrease his speed when he hit the Buick automobile. The defendant denied that he got over on Mrs. Moore's side of the highway when he came up the hill, or that she had to get over on his side of the highway in an effort to miss him.

The defendant testified that he carried his two cousins, Charles Jones and A. D. Turner, to Mr. Cupit's place during the afternoon before he left Fayette, and they gave him some money and told him to get them two bottles of wine; that he bought the wine and gave it to them; but he did not drink any of the wine.

Harriett Ferguson, who was 12 years of age and in the seventh grade at school, testified that she lived in the house on the west side of the highway a short distance south of the bridge on St. Catherine's Creek, and she saw the two cars collide. She was in her bedroom reading a book, and saw the Buick car and the light flash in the window. She looked out the window and the Buick car was crossways of the road. It looked like she was going to turn around. Harriett stated that the car coming across the bridge was on the left side of the road — "the side toward our house," the left side going north. Harriett was asked, "Why did you say it looked like she was going to turn?" Her answer was, "She had stopped her motor and had backed up, and was going to back up." On cross-examination Harriett stated that she saw the Buick car first, and about a minute later she saw the Ford coming across the bridge.

The Ford was in its right lane, "in the lane on the side our house is on." She heard the driver of the Ford put on his brakes — she heard them screech. He was going fast, but he wasn't going real fast — about 50 miles per hour. On redirect examination Harriett stated that the Buick was about in the middle of the road.

Sidney Thomas testified that he lived on the east side of the highway coming up the hill toward Washington, being the right side of the highway going north; that his house was located on a high bank overlooking the highway; that the accident occurred about 150 feet from his house; and he saw the two cars collide. He stated that he was standing about 10 feet from the edge of the highway talking to his son-in-law, and he saw Mrs. Moore's car when it came by his house. She was driving at a pretty rapid rate of speed. She applied her brakes and her car went sideways across the road and right in front of the other car. Sidney stated that, when Mrs. Moore hit the brakes on her car, she hit them hard, and that made him go and look from the edge of the bank. He saw that Mrs. Moore's car had slid over on the other side of the road. He did not see the other car until just about the minute the two cars collided.

In view of the fact that the judgment of the lower court must be reversed and a new trial granted, it is not necessary that we refer to the testimony of the other witnesses, who testified on behalf of the defendant.

The appellant has assigned and argued two main points as grounds for reversal of the judgment of the lower court: (1) That the trial court erred in refusing to grant the appellant's request for a directed verdict at the conclusion of all of the evidence; and (2) that the trial court erred in permitting the witness Harper, over the objection of the defendant, to testify as to the speed of the defendant's automobile at the time

it passed him three quarters of a mile north of the scene of the accident.

■■ ■ We think that it cannot be said that the trial court erred in refusing to grant the defendant's request for a directed verdict; ■■ ■ but we think the court committed reversible error in admitting the testimony of the witness Harper concerning the speed of the defendant's automobile at the time it passed him on the highway approximately three quarters of a mile north of the scene of the accident.

Blashfield, in his Cyclopedia of Automobile Law and Practice, Vol. 9C, Perm. Ed., Sec. 6235, says: "Ordinarily, the speed material for consideration in an automobile accident case is that at the instant of, or immediately before, the accident in question. However, whether time and distance render evidence of speed prior to the occurrence of an accident too remote depends upon the circumstances, the competency of such evidence being determinable by 'causal connection or contact with the accident,' rather than by specific distance or time. " * * *

"Evidence of the speed of a vehicle involved in an accident at a very considerable distance from the place of the accident has been held admissible for some purposes in connection with other evidence, but in other cases such evidence, or even evidence of speed shortly before the occurrence of the accident in question, has been rejected under the rule against remoteness, as not indicating the speed of the vehicle in question at the point of the accident and as having no causal relation to the occurrence."

In Barrett v. Shirley (1957), 231 Miss. 364, 95 So. 2d 471, the Court said: "As a general rule where the speed of a vehicle is a factor in determining the proximate cause of a collision the evidence as to speed should be limited to the time of, or immediately before, the collision, and the court should exclude evidence of speed

prior to and remote from the collision in question; but evidence of prior speed may be admitted if (1) the evidence shows that the vehicle continued to be operated at approximately the same speed until the collision occurs, or (2) where the circumstances are such, because of the nearness of the prior speed to the collision in point of time and distance or because of other factors, that the prior speed has substantial evidential value as to the speed of the vehicle at the time of, or immediately before, the collision.''

In that case the Court held that the testimony of a witness to the effect that, about one fourth or one half mile from the scene of the collision, the automobile in which the plaintiff was riding passed the witness at a speed of 75 or 80 miles an hour, should not have been admitted, where the witness did not state that he saw the collision or that the automobile in which the plaintiff was riding continued to the scene of the collision at the same speed.

In the case that we have here Harper testified he was driving his truck at a rate of speed of 45 miles an hour when the 1952 Ford automobile overtook him and passed him; that after the car passed him he stopped his truck and tightened the chains which held the load of heavy equipment in place on the truck; and that four or five minutes elapsed between the time the defendant's car passed him and the time he saw the car again at the scene of the accident. Harper stated that he did not see the truck any more after it passed him until he got to the scene of the accident, because there was a curve in the highway.

It thus appears from Harper's testimony that he knew nothing about the speed of the defendant's automobile after it passed him three quarters of a mile north of the scene of the accident. There is no other evidence in the record which shows that the defendant's vehicle continued to be operated at approximately 80

miles an hour after it passed Harper's truck. Harper's testimony concerning the speed of the defendant's automobile at the time it passed him, in our opinion, should have been rejected under the rule against remoteness, as not indicating the speed of the vehicle in question at the point of the accident and as having no causal relation to the accident. Harper's testimony was highly prejudicial to the defendant, and because of the admission of the testimony the judgment of the lower court is reversed and the case is remanded for a new trial.

Reversed and remanded.

*Lee, P. J., and Gillespie, Rodgers and Jones, JJ.*, concur.