BARRETT *v.* SHIRLEY

No. 40502 May 27, 1957 95 So. 2d 471

*Morse & Morse,* Poplarville; *Lester F. Williamson, Snow & Covington, Lavelle Smith,* Meridian, for appellant.

*Riddell & Dabbs,* Quitman, for appellee.

GILLESPIE, J.

Mrs. Ione Barrett, appellant, sued J. E. Shirley, appellee, for damages, the former having sustained personal injuries in an automobile collision between a Buick automobile driven by appellant's husband in which appellant was a passenger and a Plymouth automobile being operated by appellee. The Barrett vehicle was traveling north and the Shirley vehicle was traveling south. The vehicles collided on the east lane of the paved highway. Shirley was charged with failing to keep his vehicle under control and in steering his vehicle over and across the center line of the highway into the northbound lane of traffic.

From a verdict and judgment for defendant, the plaintiff appeals.

These facts were undisputed or clearly established by the overwhelming weight of the evidence. The accident occurred at night about two miles north of Quitman, Clarke County, on U. S. Highway 45. The point of impact was three or four feet east of the center line of the highway, a short distance north of the driveway leading to Landrum's Store, which is located on the east side of the highway. Appellee was traveling about 10 or 15

miles per hour when the impact took place. The Barrett vehicle skidded 99 feet up the east side of the highway before the cars collided, the left rear wheel of which skidded over the center line just before or at the time of the impact. Appellee's Plymouth was in its left lane of traffic before and at the time of the impact except that its right rear wheel was west of the center line. Appellee met a vehicle traveling north ahead of the Barrett Buick, and after appellee passed this vehicle by some twenty feet, and at a point some distance north of the Landrum Store driveway, appellee steered his Plymouth into the east or lefthand lane for the purpose of stopping at Landrum's Store. A vehicle was following appellee, and that vehicle ran onto the west shoulder of the highway and was in that position opposite the Shirley and Barrett vehicles when the latter two collided. The Shirley Plymouth was pushed backward about a car length, the Barrett Buick being 1500 pounds heavier than the Plymouth. Shirley neither applied his brakes nor turned to the left or right after he saw the Buick coming. Going south there is a curve in the highway to the east, starting about in front of Landrum's Store, and the driver of an automobile situated at the point of impact could see a vehicle coming from the south from 450 to 600 feet and could see the glare of headlights further than that. Before entering the left lane of traffic, Shirley had given a left turn signal by extending his arm from the window of his car. Shirley turned his automobile into his left lane of traffic some distance before he reached the driveway to Landrum's Store. The testimony and photographs all show that he had not reached the Landrum driveway when the impact took place, and that there was no driveway to the east until the Landrum driveway was reached; in other words, if Shirley had turned east at any time after he entered his left lane he would have gone down a small embankment.

The testimony as to the speed of the Barrett vehicle was as follows: Shirley said he did not have time to do anything to avoid the accident because "he was coming in on me so fast"; Mrs. Shirley, riding with her husband, said "it came into us like a streak of lightning," but she did not estimate the speed of the Barrett vehicle, and she said she could not judge the speed of the vehicle they passed and which was traveling ahead of the Barrett automobile; Barrett testified he was making about 55 miles per hour when the Shirley vehicle cut into the east lane in front of him; Mr. Brock, driver of the automobile following Shirley and which was on the west shoulder when the collision took place, testified it would be hard to judge the speed of the Barrett Buick, but he gave two written statements after the occurrence, in both of which he stated Barrett was not going over 60 miles per hour; witness Zimmerman testified that a Buick automobile passed him traveling 75 or 80 miles per hour some one-fourth or one-half mile south of the place of collision, and he recognized the Buick as the one involved in the collision when he arrived at the scene of accident three or four minutes later, but this testimony was inadmissible, as will appear later.

Shirley testified that when he began his turn the highway to the south was clear; that he saw the headlights of the Barrett car when it was 100 to 120 yards south of him; that when he angled into the left lane he could see past Landrum's Store about 100 yards and saw no vehicle coming from the south. Mrs. Shirley testified to substantially the same effect, adding that three or four seconds elapsed from the time she and her husband saw the Barrett automobile and the collision. Barrett testified that Shirley turned his automobile into Barrett's lane, Shirley's left, when the two automobiles were about 125 feet apart; that he could not turn to the left because a car was following Shirley and he would have hit that car head-on; that he could not turn right because he

could not see what he would hit and there was no room to get through; that the only thing he could do was to try to stop, which he did, and was traveling about 15 miles per hour when the automobiles collided. Mrs. Barrett did not testify.

We first consider the assignment dealing with the testimoney of C. C. Zimmerman, which was admitted over objection of appellant. Zimmerman testified that he was driving north along Highway 45 just out of Quitman about one-fourth or one-half mile south of the scene of the accident; that a black and white Buick passed him at a speed of 75 or 80 miles per hour; that three or four minutes later he came upon the accident and recognized the Barrett Buick as the one that passed him. He did not say that he saw the accident or that the Buick continued to the place of the accident at the same speed.

We held in Gough v. Harrington, 163 Miss. 393, 141 So. 280, that the lower court properly excluded the testimony of a witness as to the speed of an automobile at a point several hundred yards from the point where the automobile was involved in a collision. In that case, the speed of the automobile referred to by the Court was at issue. Gough v. Harrington has never been overruled; it appears that it has not been subsequently considered by this Court.

Appellee cites Sims v. State, 149 Miss. 171, 115 So. 217; Bradford v. State, 158 Miss. 210, 217 So. 277; Coggins v. State, 222 Miss. 49, 75 So. 2d 258; Bennett v. Hardwell, 214 Miss. 390, 59 So. 2d 82, and a number of cases from other jurisdictions. It would serve no purpose to attempt a discussion and reconciliation of the cases from other jurisdictions involving speed of vehicles prior to occurrence of accident. The cases cited in Blashfield, Vol. 9C, Sec. 6235, indicate considerable contrariety of opinion depending to a large extent on the circumstances surrounding the accident.

In all our cases relied on by appellee, evidence was admitted of the negligent manner or speed of the vehicle prior to and some distance from the accident. In the Sims case, one reason for admitting such testimony was to show the careless and reckless state of mind in a homicide case where the state was burdened with showing culpable negligence in the operation of the vehicle. The witnesses in that case were passengers on the bus the accused was operating, and, of course, observed the operation by accused up to and at the place of the collision. In the Bradford case, the witness testified to the speed of the automobile about a mile distant from the place of collision, but the significant fact is that the witness heard the crash and testified that the cut-out was open and the exhaust of appellant's car never slowed down until the collision. In the Coggins case, the witness kept his eye on defendant's automobile until the wreck occurred and estimated the speed at the time of the collision. In the Harwell case, the testimony of the witness which we held was competent ''pictured the manner in which Hardwell was driving just prior to and a short distance from the scene of the accident, and the proof is he continued to drive in the same manner until the accident occurred. This was not proof of negligence disconnected in time and space from the collision.'' The witness who testified to the speed of the Hardwell car as it passed him continued to watch the Hardwell car and testified that it continued to be operated in the same manner until the accident occurred. Able counsel have not cited any other cases from this jurisdiction, and those cited do not sustain appellee's contention that Zimmerman's testimony was admissible. Gough v. Harrington, supra, sustains appellant's contention that it was not.

We recognize that the trial court has some discretion in excluding or admitting such testimony, but the area within which such discretion may be exercised is limited.

■■ As a general rule where the speed of a vehicle is a factor in determining the proximate cause of a collision the evidence as to speed should be limited to the time of, or immediately before, the collision, and the court should exclude evidence of speed prior to and remote from the collision in question; but evidence of prior speed may be admitted if (1) the evidence shows that the vehicle continued to be operated at approximately the same speed until the collision occurs, or (2) where the circumstances are such, because of the nearness of the prior speed to the collision in point of time and distance or because of other factors, that the prior speed has substantial evidential value as to the speed of the vehicle at the time of, or immediately before, the collision.

■■ Zimmerman did not testify that he saw the Buick automobile when it approached the curve north of which the accident occurred. In fact, he did not testify to anything other than the speed at some point south of the place of collision and that he came upon the scene of the accident some three or four minutes after the Buick passed him. In our opinion, this does not establish causal connection with the accident. It was not shown that the Buick continued at or about the same speed to the place of collision. Under the circumstances of this case, the speed of the Barrett Buick at the place testified by Zimmerman has no substantial evidential value as to the speed at the time of, or immediately before, the collision. The jury would have had to speculate to draw the inference that Barrett continued to operate at such a high rate of speed around the curve that he had just turned before reaching the place where the accident occurred. This testimony was too remote and was inadmissible.

■■ In her motion for new trial and in her assignments of error, appellant contended that her requested peremptory instruction should have been granted and that the verdict was contrary to the overwhelming weight

of the evidence. Some of the judges are inclined to the opinion that the plaintiff was entitled to a peremptory instruction, but all agree that the verdict was contrary to the overwhelming weight of the evidence. Considering the evidence in the light most favorable to appellee, it shows that Shirley steered his automobile into the left lane of traffic some distance before he reached the driveway to Landrum's Store. At the time of the collision, he had not reached the driveway. Shirley knew there was a car following him. He did nothing to remove his vehicle from the northbound lane after he saw Barrett 100 or 120 yards away. He had time to do so but had gotten into the left lane before he reached the driveway, and there was no driveway to enter to the left, nor did he turn to his right. Shirley turned into the left lane of traffic too soon and apparently intended to continue on the left-hand side of the highway until he reached Landrum's driveway. Under the circumstances, it is difficult to see how the jury could exonerate Shirley.

 Appellant complains of certain instructions given appellee. Several were erroneous: The one on page 270 of the record because it gave the jury no guide as to the duty of Barrett and imposed upon him an indefinite duty as to foreseeability and the exercise of care after he saw the Shirley vehicle. The one on page 271 because it deals with the speed of the Barrett automobile when the Shirley vehicle came within range of his vision, which, according to some of the testimony, was nearly a quarter of a mile, and would be confusing to the jury. The one on page 272 of the record, because it leaves out of consideration whether Barrett saw Shirley's left-hand signal; and the instruction is not supported by the evidence, since the undisputed proof was that Shirley did not turn into the Landrum Store driveway but turned before he got to the driveway; and it leaves out of consideration whether the left-hand signal was appropriate, which it was not under existing conditions. The one on page 273 because it

required the jury to find for defendant if the driver of the Barrett car saw the Shirley car far enough away to stop and avoid the collision, and this is not the law, since Barrett testified he saw the Shirley car nearly a quarter mile away and there was no duty on him to stop merely because he saw the car; moreover, the instruction authorized the jury to find for defendant without regard to whether defendant was negligent. The one on page 274 because it furnished no guide to the jury as to the reasonable care required of the driver of the Barrett car, and it was not justified under the evidence. Appellant contends some of the instructions give defendant the benefit of the doctrine of last clear chance. We need not decide that, but we are of the opinion that defendant was not entitled to any such instruction.

For the reasons noted, the case is reversed and remanded.

Reversed and remanded.

All Justices concur, except *McGehee, C. J.,* who took no part.