607 So.2d 1097 (1992)
Howard Eugene HEWLETT
v.
STATE of Mississippi.
No. 89-KA-1105.
Supreme Court of Mississippi.
August 5, 1992.
*1099 Andrew K. Howorth, Hickman Rayburn & Goza, David O. Bell, Oxford, for appellant.
Michael C. Moore, Atty. Gen., Deirdre McCrory, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and ROBERTSON and SULLIVAN, JJ.
SULLIVAN, Justice, for the court:
On May 15, 1988, in Oxford, Lafayette County, Mississippi, a 1974 Chevrolet pickup truck driven by Howard Eugene Hewlett crashed into the rear of a 1985 Buick LaSabre which was occupied by Jana L. Gunn, and her parents, Dewey A. and Linda B. Gunn. The Buick LaSabre almost instantly burst into flames and all the Gunns died of asphyxiation.
Hewlett was indicted on three counts for the willful, unlawful, and felonious slaying of Jana L. Gunn, Dewey A. Gunn, and Linda B. Gunn by his culpable negligence, or manslaughter, and as an habitual offender.
The case was tried on April 10, 1989, and Hewlett was found guilty of manslaughter on all three counts. Hewlett was also found to be an habitual offender and sentenced to three consecutive twenty (20) year sentences in the custody of the Mississippi Department of Corrections without the possibility of reduction or suspension of sentence, or eligibility for parole or probation.
Hewlett appeals and assigns the following errors:
1. The trial court erroneously excluded testimony about pending civil litigation which would tend to exculpate the appellant.
2. The trial court erroneously admitted photographs of the bodies of the victims which were both inflammatory and irrelevant, having no probative value; and to the extent that any relevancy or probative value might have existed, the same was substantially outweighed by unfair prejudice against the appellant, confusion of the issues, and by misleading the jury, pursuant to M.R.E. 403.
3. The trial court erroneously admitted a photograph of the appellant taken subsequent to his arrest which was both inflammatory and irrelevant, having no probative value; and to the extent that any relevancy or probative value might have existed, the same was substantially outweighed by unfair prejudice against the appellant, confusion *1100 of the issues, and by misleading the jury, pursuant to M.R.E. 403.
4. The trial court erroneously admitted testimony that, at the time of the accident, the appellant had no valid driver's license and that the vehicle which the appellant operated had an expired license and inspection sticker, which was irrelevant and had no probative value; and to the extent that any relevancy or probative value might have existed, the same was substantially outweighed by unfair prejudice against the appellant, confusion of the issues, and by misleading the jury pursuant to M.R.E. 403.
5. The trial court erroneously admitted testimony offered by police officer Elzey Morgan concerning the appellant's driving behavior at a point at least three miles from the accident site as the same was too remote in nature as to be probative of any relevant issue for the trial, and to the extent that any relevancy or probative value might have existed, the same was substantially outweighed by unfair prejudice against the appellant, confusion of the issues, and by misleading the jury, pursuant to M.R.E. 403.
6. The trial court erred in overruling the defendant's objection to the defendant's being sentenced pursuant to Miss. Code Ann. § 99-19-81, because the state failed to prove that the defendant had been sentenced to separate terms of one year or more on two previous occasions.
7. The trial court erred in sentencing the defendant as an habitual offender, because the face of the documents of the prior guilty pleas from the state of Wisconsin does not make a proper showing that the defendant entered either guilty plea knowingly or voluntarily; and,
8. The sentence is in violation of defendant's constitutional rights, specifically the Eighth Amendment to the Constitution of the United States, in that sentencing this defendant to a period of sixty years without parole is cruel and unusual punishment and violates the precepts of proportionality.

I.

DID THE TRIAL JUDGE ERRONEOUSLY EXCLUDE TESTIMONY OF PENDING CIVIL LITIGATION WHICH WOULD TEND TO EXCULPATE HEWLETT?
Phillip Gunn, the son of Dewey and Linda, testified about the visit his parents had made to his Oxford home and their leaving for Clinton on May 15th. On cross-examination, Phillip was asked whether he had looked into the possibility of filing a civil suit in the belief that the explosion was caused by a defect in the Buick LaSabre. The district attorney objected to this question on the basis of relevance, and the trial judge sustained the objection, not allowing Hewlett to ask questions about the possibility of any civil litigation against the manufacturer of the car.
Hewlett argues here that evidence of a civil lawsuit by Gunn against the car manufacturer based on an allegation that the manufacturer's defect was responsible for the deaths of his family is exculpatory in nature, and that allegations that the design defect caused the death are contrary to the charges that the conduct of Hewlett caused the deaths. Therefore, according to Hewlett, the trial judge erroneously limited Hewlett's right to cross-examine Gunn.
The right of a defendant to confront and cross-examine the witnesses against him is fundamental and cannot be substantially restricted, Murphy v. State, 453 So.2d 1290, 1292 (Miss. 1984), but the right of confrontation is not without limits. Though the scope of cross-examination is ordinarily broad, it is within the sound discretion of the trial judge, who possesses the inherent power to limit cross-examination to relevant matters. Sayles v. State, 552 So.2d 1383, 1386 (Miss. 1989); Foster v. State, 508 So.2d 1111, 1114 (Miss. 1987); Dozier v. State, 257 So.2d 857, 859 (Miss. 1972).
However, the discretion of the trial court is not without limits; this Court has reversed where the trial court exceeded the limits in an area proper for cross-examination. *1101 See, Suan v. State, 511 So.2d 144 (Miss. 1987).
In order for driving while intoxicated to be a factor in establishing criminally culpable negligence it must contribute proximately to the negligence and to the resulting deaths. Frazier v. State, 289 So.2d 690, 692 (Miss. 1974). The negligence of the deceased or of a third person is not a defense to a prosecution for a homicide resulting from the operation of a motor vehicle, but it may be considered on the issue of whether the accused was criminally negligent or whether his conduct was the proximate cause of the homicide. Coggins v. State, 222 Miss. 49, 75 So.2d 258, 264, (1954). Questions about design defects raise the element of causation, and by raising them Hewlett was seeking to show that his conduct did not cause the deaths of the Gunns but that the deaths were the possible result of a design defect in the Buick car.
From examining the record it is clear that the trial judge did not restrict Hewlett's cross-examination on the issue of a possibility of another cause of the deaths. As can be seen from the cross-examination of Mr. Gunn by counsel for Hewlett, four of the six questions asked were in regard to whether there was any information in regard to the possibility of any defects in the automobile. Gunn's answers provided what Hewlett was seeking which was an indication that there may have been some defect in the car that caused the deaths. The trial judge did restrict Hewlett's question on this issue, but only in regard to whether or not there was a civil suit.
The existence of a civil suit has no bearing on Hewlett's guilt or innocence. The civil suit is a collateral matter and the trial judge did not err in restricting cross-examination in this area. The information Hewlett was seeking through his questions, whether there may have been a defect in the car, was actually provided on cross-examination. This assignment is without merit.

II.

DID THE TRIAL JUDGE ERRONEOUSLY ADMIT PHOTOGRAPHS OF THE BODIES OF THE VICTIMS WHICH WERE BOTH INFLAMMATORY AND IRRELEVANT, HAVING NO PROBATIVE VALUE; AND TO THE EXTENT THAT ANY RELEVANCY OR PROBATIVE VALUE MIGHT HAVE EXISTED, THE SAME WAS SUBSTANTIALLY OUTWEIGHED BY UNFAIR PREJUDICE AGAINST HEWLETT, CONFUSION OF THE ISSUES, AND MISLEADING THE JURY PURSUANT TO M.R.E. 403?
During the testimony of F.A. Buddy Roy, Lafayette County Medical Examiner and Investigator, the district attorney offered as evidence two pictures of the charred bodies of the Gunns taken at the scene and three taken at the morgue to show that there were three bodies in the car. Hewlett objected to the pictures as they had little, if any probative value, and that the probative value was outweighed by the potential for prejudice due to what they depicted. The trial judge determined that the pictures of the bodies taken at the scene were admissible, while those taken at the morgue were not. The two photographs of the bodies taken at the scene were shown to the jury.
The exclusion of relevant evidence is governed by M.R.E. 403. This rule states:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
We have repeatedly held that the admissibility of photographs is within the sound discretion of the trial judge. We will not reverse the lower court on the ground that the photographs were gruesome and prejudicial, unless the trial judge has abused his discretion. Willie v. State, 585 So.2d 660, 674 (Miss. 1991); Griffin v. State, 557 So.2d 542, 549 (Miss. 1990); Hunt v. State, 538 *1102 So.2d 422, 426 (Miss. 1989); Lanier v. State, 533 So.2d 473, 483 (Miss. 1988); McFee v. State, 511 So.2d 130, 134 (Miss. 1987); Kelly v. State, 463 So.2d 1070, 1074 (Miss. 1985).
Photographs of a victim should not ordinarily be admitted into evidence where the killing is neither contradicted nor denied, and the corpus delicti and the identity of the deceased have been established. Photographs may nevertheless be admitted into evidence in criminal cases where they have probative value and where they are not so gruesome or used in such a way as to be overly prejudicial or inflammatory. Sudduth v. State, 562 So.2d 67, 70 (Miss. 1990). However, photographs used to support testimony of witnesses have been accepted as relevant and their admission as evidence was not an abuse of discretion. Lanier v. State, 533 So.2d at 484; McFee v. State, 511 So.2d at 135 (photograph of the crime scene); Mackbee v. State, 575 So.2d 16, 32 (Miss. 1990) (photograph depicted the bodies as they were seen at the crime scene).
In McNeal v. State, 551 So.2d 151 (Miss. 1989), we cautioned our trial judges to carefully consider the circumstances surrounding the admission of photographs. The trial judge must specifically consider whether the proof is absolute or in doubt as to the identity of the guilty party, as well as whether the photographs are necessary evidence or simply a ploy on the part of the prosecutor to arouse the passion and prejudice of the jury. McNeal, 551 So.2d at 159. This caution was repeated in Mackbee.
Our determination of this issue hinges upon whether the photographs inflamed and prejudiced the jury. Willie v. State, 585 So.2d at 674.
The photographs depict the bodies as they were upon being viewed at the scene by the medical examiner. The photographs do supplement and clarify his testimony. Ashley v. State, 423 So.2d 1311, 1316 (Miss. 1983). While the photographs are not pleasant, they are not so gruesome, hideous, and nauseating as to be inflammatory and appeal to the passion and prejudice of the jury. Willie v. State, 585 So.2d at 674.
The trial judge exercised his discretion with care and there is no merit to this assignment of error.

III.

DID THE TRIAL JUDGE ERRONEOUSLY ADMIT A PHOTOGRAPH OF HEWLETT TAKEN AFTER HIS ARREST WHICH WAS BOTH INFLAMMATORY AND IRRELEVANT, HAVING NO PROBATIVE VALUE, AND SUBSTANTIALLY CREATING UNFAIR PREJUDICE AGAINST HEWLETT?
During the testimony of Detective Andy Waller the district attorney offered into evidence the picture of Hewlett taken by Detective Waller at the Lafayette County jail. Counsel for Hewlett objected to the photograph as a mug shot. The trial judge overruled that objection as there was nothing on the photograph that identified it as a mug shot. There are three prerequisites to the introduction of mug-shot type photographs which need to be met to preclude the introduction from being error:
1. The Government must have a demonstrable need to introduce the photographs; and
2. The photographs themselves, if shown to the jury, must not imply that the defendant had a prior criminal record; and
3. The manner of introduction at trial must be such that it does not draw particular attention to the source or implications of the photographs.
Sloane v. State, 437 So.2d 16, 18 (Miss. 1983); quoting United States v. Harrington, 490 F.2d 487, 494 (2nd Cir.1973).
In this case, no demonstrable need for the use of the photograph is evident. Hewlett's identity was never in question. If the photograph here had been a mug-shot the trial judge would have been in error admitting it as there was no demonstrable need for it. However, this photograph is simply not a mug-shot.
*1103 The fundamental reason mug-shot photographs of a defendant are inadmissible is because they tend to put before the jury some indication of prior criminal conduct, which reflects unfavorably on the defendant's character. The photograph here was taken on the day of the accident and arose from this case and not from a previous criminal offense. The photograph does not indicate any prior criminal activity. The very reason why mug-shot photographs are inadmissible is not present in this photograph.
We caution the trial judge, however, that the photograph was not relevant and therefore, was inadmissible. However, there is no indication that the admission of the photograph affected a substantial right, therefore there is no error. M.R.E. 103(a).
This assignment is without merit.

IV.

DID THE TRIAL JUDGE ERRONEOUSLY ADMIT TESTIMONY THAT HEWLETT HAD NO VALID DRIVER'S LICENSE, THAT HIS VEHICLE HAD AN EXPIRED LICENSE AND INSPECTION STICKER, WHICH WAS IRRELEVANT AND HAD NO PROBATIVE VALUE?
Detective Waller testified that during the investigation of the scene of the accident he noticed that the inspection sticker and tag on Hewlett's truck had expired. He also testified that Hewlett did not have a valid driver's license. Objections to these questions were overruled by the trial judge.
Hewlett argues that the issue at trial was his culpable negligence, and the fact that he was in violation of traffic regulations at the time of the accident is unrelated to the cause of the accident.
The law generally agrees with Hewlett. The fact that an automobile is not licensed or the driver was not licensed has no causal connection to the accident and does not charge the operator with liability. M.R.E. 404(b) provides that evidence of other crimes, wrongs, or acts are not admissible to prove character and that the person acted in conformity with that character, although it is admissible to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The evidence of the absence of an inspection sticker on the truck and Hewlett's lack of a driver's license does not show any of these, but implies a character for disregarding traffic regulations. This is prohibited by the evidentiary rule.
The trial judge improperly admitted the lack of an inspection sticker and driver's license. However, the admission of the evidence was harmless as it affected no substantial right of Hewlett's. M.R.E. 103. The evidence is clear that the accident was not the result of a lack of a driver's license or inspection sticker, but of Hewlett's driving while intoxicated. This assignment is without merit.

V.

DID THE TRIAL JUDGE ERRONEOUSLY ADMIT TESTIMONY OFFERED BY POLICE OFFICER MORGAN CONCERNING HEWLETT'S DRIVING BEHAVIOR AT A POINT AT LEAST THREE MILES FROM THE ACCIDENT SITE AS THAT WAS TOO REMOTE IN NATURE TO BE PROBATIVE OF ANY RELEVANT ISSUE OF THE TRIAL?
Before Officer Elzey Morgan took the stand to testify, Hewlett objected to the substance of his testimony, which was to describe Hewlett's manner of driving some three miles prior to the accident. The trial judge overruled this objection and Officer Morgan testified that on the day of the accident he was off duty and in his front yard and saw Hewlett pass his home. He said that Hewlett was driving at a high right of speed and that as Hewlett approached the intersection with Old Taylor Road he slid through the intersection. Once on Old Taylor Road, Hewlett continued at a high rate of speed. On cross-examination, Morgan admitted he did not actually see the accident and that it occurred *1104 some three miles from where he saw Hewlett driving.
A witness may not testify to the speed and the manner in which a vehicle was driven at a point distant or remote from the scene of a collision. Gray v. State, 427 So.2d 1363, 1368 (Miss. 1983). This is so because certain types of conduct, such as speeding or swerving, can change quickly, and evidence of that conduct at one point has little value as proof of the same conduct at a different time and place. The further that conduct is away from the scene of an accident the less probable that the conduct continued.
The determination of whether evidence is too remote to be relevant is left to the discretion of the trial judge, and his decision will not be disturbed in the absence of clear proof of abuse of discretion. Howard v. State, 346 So.2d 918, 920 (Miss. 1977); Stewart v. State, 226 So.2d 911, 912 (Miss. 1969). To help a trial judge make that decision this Court has stated some guidelines in Barrett v. Shirley, 231 Miss. 364, 95 So.2d 471 (1957):
[a]s a general rule where the speed of a vehicle is a factor in determining the proximate cause of a collision the evidence as to speed should be limited to the time of, or immediately before, the collision, and the court should exclude evidence of speed prior to and remote from the collision in question; but evidence of prior speed may be admitted if (1) the evidence shows that the vehicle continued to be operated approximately at the same speed until the collision occurs, or (2) where the circumstances are such, because of the nearness of the prior speed to the collision in point in time and distance or because of other factors, that the prior speed has substantial evidential value as to the speed of the vehicle at the time of, or immediately before, the collision.
Barrett v. Shirley, 95 So.2d at 474; quoted in Gray v. State, 427 So.2d at 1368. The most important factor affecting the admissibility of evidence concerning driver conduct before reaching an accident is the degree of probability that the conduct continued.
In Barrett, the testimony about the speed of the vehicle was held to be too remote and inadmissible because the witness only testified about the speed of the vehicle at the point the vehicle passed him. There was nothing to show that the vehicle continued at or about the same speed to the collision. Therefore the testimony had no evidentiary value as to the speed of the vehicle at the time of, or immediately before, the collision. The jury was left to speculate that the vehicle continued at that speed to the collision. Barrett v. Shirley, 95 So.2d at 474.
However, here Officer Morgan's testimony was based on what he saw some three miles from the accident scene. This alone would be too distant and remote from the accident to be of probative value of how Hewlett was driving at the time of the accident. However, Bryan Shuey testified that Hewlett pulled out in front of him onto Old Taylor road and that he observed the truck almost continually until the accident occurred. Shuey estimated that the truck was traveling about fifty (50) miles an hour, when the posted speed limit on the road was from thirty (30) to forty (40) miles an hour. Shuey's testimony shows that Hewlett continued to drive about the same way as when Officer Morgan saw him. Barrett v. Shirley, 95 So.2d at 474. In light of Shuey's testimony the trial judge did not abuse his discretion in admitting Officer Morgan's testimony. The testimony of Morgan and Shuey prevent the jury from having to speculate about Hewlett's continued manner of driving.
This assignment is without merit.

VI.

DID THE TRIAL JUDGE ERR IN OVERRULING THE DEFENDANT'S OBJECTION TO HIS BEING SENTENCED PURSUANT TO MISS. CODE ANN. § 99-19-81, BECAUSE THE STATE FAILED TO PROVE THAT THE DEFENDANT HAD BEEN SENTENCED TO SEPARATE TERMS OF ONE YEAR OR MORE, ON TWO PREVIOUS OCCASIONS?
Miss. Code Ann. § 99-19-81 (Supp. 1991), provides:

*1105 Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents of different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
At the hearing on whether or not Hewlett was an habitual offender under the statute, the State bore the burden of proving beyond a reasonable doubt each element of habitual offender status. Pittman v. State, 570 So.2d 1205, 1206 (Miss. 1990). The district attorney offered two packets detailing convictions from the state of Wisconsin. The first conviction, case number H-8392, was in 1973 for felonious endangerment of human life. The Wisconsin court stayed Hewlett's sentence of three (3) years and placed him on probation for three (3) years. Hewlett evidently violated probation and was sentenced to an "indeterminate term of not more than three (3) years."
The second conviction, case number J-2353, was in 1978 for feloniously causing injury by conduct regardless of human life. Hewlett was sentenced to a term of not more than three (3) years. The three (3) year sentence was stayed and Hewlett was placed on three (3) years probation. Additionally, Hewlett was required to serve the first nine (9) months of his probation in the Wisconsin House of Corrections.
The trial judge found that these packets were sufficient evidence of two separate and prior felony convictions, each with sentences of one year or more. On the basis of these convictions the trial judge sentenced Hewlett as an habitual offender.
Hewlett argues that the prosecution failed to prove beyond a reasonable doubt that the requirements of § 99-19-81 had been met. He argues that in the case designated as H-8392, he was sentenced to an "indeterminate term of not more than three (3) years" and this does not clearly show that he was sentenced to a term of one year or more. Hewlett further contends that the document styled "Judgment of Conviction/Sentence to Confinement" of the case designated as J-2353 states that he was committed to the Wisconsin House of Corrections "for a term of nine (9) months."
Hewlett's contentions focus on the length of the sentences and that they were insufficient for the purposes of proving that he was an habitual offender under § 99-19-81. His argument that the reference to the sentence entered in H-8392 does not clearly show that he was sentenced to a term of one year or more is without merit. Wis. Stat. Ann. § 973.15 (West 1982), provides that all sentences to the Wisconsin state prisons must be for one year or more. Under this statute Hewlett was sentenced to at least one year and no more than three years in the Wisconsin prison for the commission of the felony in H-8392. The argument that the sentence in J-2353 was only for nine months is also without merit. Though the document Hewlett relies on does state that he was to be committed to the House of Corrections for a term of nine months, it does not give the complete picture of his actual sentence. Hewlett was actually sentenced to an indeterminate term of no more than three years in the Wisconsin State Prisons. The sentence was stayed for three years and Hewlett was placed on probation for three years. Hewlett was to be confined for the first nine months of the probation period. The packet shows that Hewlett was not given a nine month sentence, but a three year sentence which was stayed and probation given. The fact that there was no actual incarceration does not affect the sufficiency of the sentences as evidence of habitual offender status. The statute is satisfied where the defendant was twice previously convicted of separate felonies and a sentence of one or more years was pronounced, regardless of subsequent probation or suspension of sentence. Jackson *1106 v. State, 381 So.2d 1040, 1042 (Miss. 1980); Weaver v. State, 497 So.2d 1089, 1096 (Miss. 1986).
The evidence offered by the district attorney was sufficient to show beyond a reasonable doubt that Hewlett was an habitual offender. This assignment of error is without merit.

VII.

DID THE TRIAL JUDGE ERR IN SENTENCING HEWLETT AS AN HABITUAL OFFENDER BECAUSE THE FACE OF THE DOCUMENTS OF THE PRIOR GUILTY PLEAS FROM THE STATE OF WISCONSIN DO NOT MAKE A PROPER SHOWING THAT HEWLETT ENTERED A GUILTY PLEA EITHER KNOWINGLY OR VOLUNTARILY?
Hewlett argues that the records of the convictions do not reflect whether his guilty pleas in the cases were knowingly and voluntarily given and are therefore constitutionally invalid. Hewlett relies heavily on his analysis of Phillips v. State, 421 So.2d 476 (Miss. 1982).
In Phillips, this Court, following Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), established that before a conviction based on a guilty plea can be used for the purpose of enhancing the sentence of a defendant as an habitual offender, it must appear on the face of the conviction that the guilty plea was both knowingly and voluntarily given. The presumption of constitutionality was done away with. Id. at 481. Possibly constitutionally invalid convictions are simply voidable and may still be used for purposes of habitual offender until actually voided. Id. at 483. Direct challenges to the constitutional validity of such a conviction should be brought in the state in which the conviction occurred. Id. at 482.
From Phillips, it is clear that it must appear in the conviction that the defendant knowingly and voluntarily entered the guilty plea. In both packets in evidence in this case, it is obvious that after Hewlett entered his guilty plea he was examined by the trial court judge. There is no clear showing from the record that Hewlett knowingly and voluntarily entered the pleas. Under Phillips the pleas would be voidable, but still usable for purposes of habitual offender status.
However, we need not go that far as Hewlett did not challenge guilty pleas involved in this case. Hewlett's attorney asked whether the information appeared in the packets, but at no time did he dispute the pleas or make an effort to show that the guilty pleas were not constitutionally valid. We have stated before that the burden is on the defendant to introduce evidence to make a prima facie showing that the guilty plea was constitutionally invalid. Estelle v. State, 558 So.2d 843, 848 (Miss. 1990). Hewlett failed in this regard. This assignment is without merit.

VIII.

WAS THE SENTENCE IN VIOLATION OF HEWLETT'S CONSTITUTIONAL RIGHTS, SPECIFICALLY THE EIGHTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES, IN THAT HIS SENTENCE OF SIXTY YEARS WITHOUT PAROLE IS CRUEL AND UNUSUAL PUNISHMENT AND VIOLATES THE PRECEPTS OF PROPORTIONALITY, U.S. CONST. AMEND. VIII?
The trial judge found that Hewlett was an habitual offender under § 99-19-81 and sentenced him, as required by the statute, to the maximum term prescribed by § 97-3-25[1] on each of the three counts. Hewlett was sentenced to three consecutive twenty (20) year sentences for a total of sixty (60) years.
*1107 Hewlett argues that this sentence violates his Eighth Amendment rights. He argues very briefly that the sentence is cruel and unusual punishment and violates the concepts of proportionality, as three twenty year sentences were given from one involuntary act. Hewlett cites no authority to support this assignment.
The prosecution contends that because the assignment is neither supported by authority nor preserved for review it is procedurally barred. The prosecution correctly points out that a defendant's failure to cite any authority in support of his assignment of error precludes this Court from considering his claim on appeal. Kelly v. State, 553 So.2d 517, 521 (Miss. 1989), citing Brown v. State, 534 So.2d 1019, 1023 (Miss. 1988), cert. denied 490 U.S. 1007, 109 S.Ct. 1643, 104 L.Ed.2d 158 (1989); Shive v. State, 507 So.2d 898 (Miss. 1987), and Pate v. State, 419 So.2d 1324 (Miss. 1982). Additionally, the prosecution argues that Hewlett may not now raise this issue because he did not raise it during the sentencing phase. Reed v. State, 536 So.2d 1336, 1339 (Miss. 1988).
In any case, the sentences are within the limit permitted by statute. We have held that when the trial judge imposes a sentence within the prescribed limits of a statute, it will generally be upheld and not regarded as cruel and unusual. Barnwell v. State, 567 So.2d 215, 222 (Miss. 1990); Reed v. State, 536 So.2d at 1339; Whitley v. State, 511 So.2d 929, 932 (Miss. 1987). Extended proportionality analysis is not required by the Eighth Amendment for a sentence unless it's a sentence of life in prison without the possibility of parole or a sentence which is manifestly disproportionate to the crime committed. Barnwell v. State, 567 So.2d at 221.
This assignment is not properly before this Court.
There being no merit to any of the assignments of error raised by Hewlett, his conviction and sentence by the Lafayette County Circuit Court is hereby affirmed.
CONVICTION OF MANSLAUGHTER AND SENTENCE OF THREE (3) CONSECUTIVE TWENTY (20) YEAR TERMS, AS AN HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, PITTMAN and BANKS, JJ., concur.
DAN M. LEE, P.J., concurs in result only.
McRAE, J., not participating.
NOTES
[1] Miss. Code Ann. § 97-3-25 (1972), provides the penalty for manslaughter. The statute states that:

Any person convicted of manslaughter shall be fined in a sum not less than five hundred dollars, or imprisoned in the county jail not more than one year, or both, or in the penitentiary not less than two years, nor more than twenty years.