DAN M. LEE, Presiding Justice,
for the Court:
In the July 1988, term of the Warren County Grand Jury, George Owens was indicted for the murder of Edward Wright. A change of venue was granted, and the trial was moved to Sharkey County in Rolling Fork, Mississippi. Trial commenced on April 25, 1989, and after three days of testimony and other evidence, the jury convicted Owens for the crime of manslaughter. Owens was sentenced to serve eighteen (18) years in the custody of the Mississippi Department of Corrections. Post trial motions for JNOV and New Trial were denied, and now Owens appeals to this Court with three assignments of error.’

*411
I.The court violated Section 14, Article 3 of the Constitution of the State of Mississippi and the Sixth and Fourteenth Amendments of the Constitution of the United States in refusing to allow George Owens to present testimony in his defense explaining why he had a pistol in his hand when he emerged from hiding on the night of May 16, 1988.

II.The court erred in not excluding the statements of the defendant, George Owens, presented into evidence during the course of the trial which had not been previously provided to defense counsel by the prosecution.

III.The circuit court erred in failing to grant the defendant’s motion for a directed verdict of acquittal and further by failing to grant the defendant’s motion for a new trial.

Following a careful review of the record in this case, we affirm Owens’ conviction for manslaughter and corresponding sentence. In his first assignment of error, however, we find that Owens raises a point which merits some discussion. Before proceeding to a discussion of this issue, we present a few facts which have brought us this far.
FACTS
This case involved six grown men in Vicksburg who were engaged in a bar brawl which was carried into the street. A tragic and senseless consequence of the melee was the shooting death of Edward Wright.
The six men in Vicksburg consisted of two groups of three men who “ran together” in two separate groups; and, there was much animosity between the two factions. George Owens-appellant, Clyde Judge, and Aaron Hearon “ran together” in one group; and Edward Wright-deceased, Johnny Davis, and Eddie McCoy comprised the second group.
On the night of May 16, 1988, all six men were patrons at a Vicksburg night club when a caustic verbal exchange erupted between Johnnie Davis and Clyde Judge. The argument escalated to the point that Clyde Judge pulled a gun on Johnnie Davis. Ironically, the appellant, George Owens, stepped in at this point and played the role of peacemaker by disarming his friend, Clyde Judge. Owens concealed the gun somewhere on his person. By this time, the excitement was a little too much for the club owner, and he ordered all of the men to leave his establishment. George Owens, Clyde Judge, and Aaron Hearon left the club on foot and were walking along the street towards home. Eddie McCoy, Johnnie Davis, and Edward Wright left the club in a pick-up truck driven by McCoy. As might be expected, McCoy, Davis and Wright met Owens, Judge, and Hearon in the street.
At trial, Aaron Hearon and Clyde Judge testified that Eddie McCoy began firing a gun at George Owens. Owens and Hearon sought cover in the roadside brush, and Owens retrieved the gun that he had taken from Judge only minutes earlier at the club. Judge and Davis picked up where they left off by engaging in a fist fight in the street. After firing his gun a few times and depositing Davis and Wright, his passengers, McCoy left the scene in his pick-up. When McCoy left in his truck, Hearon wrongly assumed that Davis and Wright left with him and he called out to George Owens that it was safe to emerge. When Owens came out from hiding, he immediately encountered Edward Wright.
At this point, the testimony which was presented at trial was conflicting. Johnnie Davis testified that when George Owens shot Edward Wright, Owens was approximately four or five feet from Wright. By contrast, Aaron Hearon testified that the shooting of Edward Wright was an accident. Hearon testified that when Owens emerged from the brush, Edward Wright “popped up somewhere” and Wright grabbed Owens’ hand which was holding the gun. According to Hearon, the two were tussling and the gun discharged twice. Hearon testified that the first shot was fired in the air, but the second shot which struck Wright in the abdomen at a downward angle. Clyde Judge testified *412 that he was busy fighting Johnnie Davis and did not see the shooting.
As noted above, George Owens was indicted for the murder of Edward Wright. The charge in the indictment alleged that Owens willfully, unlawfully, feloniously and with malice aforethought shot and killed Wright. However, the jury returned a verdict of guilty of the crime of manslaughter, which is the killing of a human being in the heat of passion, without malice aforethought. See Miss. Code Ann. § 97-3-35 (1972).

I. The court violated Section 14, Article 3 of the Constitution of the State of Mississippi and the Sixth and Fourteenth Amendments of the Constitution of the United States in refusing to allow George Owens to present his witness testimony in his defense explaining why he had a pistol in his hand when he emerged from hiding on the night of May 16, 1988.

The sum and substance of Owens’ defense was that the gun discharged by accident while he was tussling with Edward Wright. Hence, Owens waged a defense of excusable homicide by accident and misfortune. The defense of accident and misfortune is explained at Miss. Code Ann. § 97-3-17 (Supp.1991):
The killing of any human being by the act, procurement, or omission of another shall be excusable:
(a) When committed by accident and misfortune in doing any lawful act by lawful means, with usual and ordinary caution, and without any unlawful intent;
(b) When committed by accident and misfortune, in the heat of passion, upon any sudden and sufficient provocation;
(c) When committed upon any sudden combat, without undue advantage being taken, and without any dangerous weapon being used, and not done in a cruel or unusual manner.
At trial, Owens did not take the stand to testify in his own behalf.. Therefore, this left him with a somewhat formidable task of proving his defense of accident and misfortune through the testimony of others. As a means to this end, Owens sought to establish why he had the gun in his hand when he emerged from hiding and encountered Edward Wright.
Eddie McCoy, who fired a gun at Owens when the street fight commenced, had recently been arrested on a cocaine charge. McCoy allegedly blamed Owens for turning him in to the police, which would explain his hostility towards Owens. Furthermore, McCoy had allegedly made threats against the life of Owens. Since Owens feared McCoy and McCoy was firing a gun at him in the street, then Owens wanted the jury to understand that it was justifiable and reasonable for him to emerge from the brush with a gun in hand. Owens argues that if the jury could understand why he emerged with a gun, then that fact would tend to negate felonious intent and make his defense of accident and mistake more credible.
On appeal, Owens asserts that the trial court erred by not allowing him to question McCoy and other witnesses about McCoy’s prior drug arrest, and specifically that McCoy blamed his arrest on Owens.
On four occasions, the trial judge limited testimony concerning McCoy’s prior drug arrest and the fact that McCoy blamed Owens for his misfortune. On the first occasion, Owens’ defense counsel was cross-examining Clyde Judge:
Q. All right. Have you ever heard Eddie McCoy make threats against George Owens?
A. Yes, I heard him one time at Moses’ when me and George was there. He was in the store and we were coming in and we heard him tell a guy that he was going to get him because he thought George had set him up on a—
BY MR. PATRICK: Objection.
A. (Continuing) cocaine deal.
BY MR. PATRICK: Objection.
BY THE COURT: I sustain as to the cause. I’ll let him — what’s already there state [sic].
Q. Eddie McCoy said he was going to get who?
A. George Owens.
*413 Q. Do you know what he meant by ‘I’m going to get George Owens’?
A. Yes, I did.
Q. What did that mean?
A. That mean that he’s going to try to kill him.
BY MR. PATRICK: Objection, Your Honor. That is, that is—
BY THE COURT: I’ll sustain the objection. The jury will disregard it.
Q. How many other people were around Moses’ when Eddie McCoy made that threat?
A. A number of them around there that heard him say that.
On a second occasion, Charles Smith, the club owner, was being questioned on cross examination by Owens’ attorney:
Q. Did he (Eddie McCoy) ever tell you that he thought George Owens turned him in on the cocaine bust?
A. No.
BY MR. PATRICK: Objection, Your Honor.
BY THE COURT: I’ll sustain, but it’s already answered. Jury, disregard anything about that.
On a third occasion when McCoy was testifying, the court limited inquiry on the circumstances of McCoy’s prior drug arrest.
Q. You don’t recall threatening George Owens about killing him, or hurting him, or doing something to him because he supposedly turned you in on a cocaine bust?
A. No, I didn’t.
Q. But you were busted for cocaine?
BY MR. PATRICK: Objection, Your Honor.
A. Yes, I was.
BY THE COURT: Sustained. The jury will disregard.
BY MR. PERRIER: Your Honor, this is necessary for the defense.
BY MR. PATRICK: Your Honor, may I approach the bench?
BY THE COURT: Yes, sir.
Finally, in Owens’ case-in-chief the trial judge limited the testimony of Tyler Smith, a Vicksburg man who knew all of the participants well.
Q. What type threats does he [Eddie McCoy] make against George Owens?
A. Well, Eddie McCoy got busted for—
BY MR. PATRICK: Objection, Your Honor.
A. (Continuing) possession of cocaine.
BY THE COURT: Sustained.
Q. Mr. Smith, just specifically what kind of threats?
A. He said he was gonna kill him.
Q. He said he was going to kill George Owens?
A. Yes, sir.
DISCUSSION
Our rules of evidence define relevant evidence as follows:
‘Relevant Evidence’ means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
M.R.E. 401.
M.R.E. 402 provides that all relevant evidence is admissible.[1] Owens was indicted and tried for the murder (malice aforethought) of Edward Wright. The jury convicted Owens for manslaughter (heat of passion without malice aforethought). Suffice it to say that Owens’ state of mind— immediately prior to, and at the time that the gun discharged — was very relevant to the charge in the indictment for which he was being tried.
There is ample testimony in the record that moments prior to the shooting of Edward Wright, Eddie McCoy was firing a gun at Owens. There was other credible *414 evidence that McCoy had made threats against the life of Owens. When Owens emerged from hiding with the gun in hand, he was keenly aware that McCoy had been trying to shoot him. Thus, Owens made the reasonable choice of arming himself with the gun that he had disarmed from Clyde Judge earlier in the evening. It is clear from this record that there was total pandemonium in the street complete with fist fights and gunfire immediately prior to and during the time that Wright was shot, and Owens’ defense was that the gun discharged while struggling with Wright amidst the confusion. Aaron Hearon’s testimony supported Owens’ defense. Without question, Owens’ state of mind was central to the State’s charge against him and to his defense of accident and misfortune. The reason for having the gun in hand is inextricably linked to his state of mind, particularly when the State charged Owens with malice aforethought murder. Owens’ purpose in emerging from the brush with a gun suggests that he was not an aggressor with a premeditated design. Full development of these facts should have been allowed at trial. If evidence has any probative value, the rule favors its admission. Williams v. State, 543 So.2d 665, 667 (Miss.1989); Lockett v. State, 517 So.2d 1317, 1331 (Miss.1987); Foster v. State, 508 So.2d 1111, 1117 (Miss.1987). The facts regarding McCoy’s drug árrest and McCoy’s blame of Owens for the arrest substantiate Owens’ fear and the need for Owens to arm himself. It follows then that the trial court abused its discretion when it ruled that the testimony was irrelevant and excluded it for that reason. See Williams v. State, 543 So.2d 665, 667 (Miss.1989).
Finding that it was error for the lower court to exclude the testimony, our job in any other case might be complete, and we would remand the case to the circuit court for a new trial. However, a close examination of this record reveals that a different result is warranted.
While it is true that on four occasions the lower court erroneously excluded testimony regarding Eddie McCoy’s blame of Owens for McCoy’s drug arrest, we note that there were several instances wherein the jury heard testimony concerning the ill will that existed between McCoy and Owens. For example, when Tyler Smith was testifying, Smith testified that McCoy had stated that he (McCoy) was going to kill George Owens for setting him up on a cocaine bust. This testimony appears on pages 387 and 390 of the record, and it drew no objection from the State. The jury received this testimony for its full worth:
Q. Oh, okay. Let me back up on that then. Before Edward Wright got shot, he [McCoy] told you that he had shot at George Owens?
A. No. Before Edward Wright got shot that’s when the Vicksburg Police Department busted Eddie McCoy for possession of cocaine. That’s when he told me he was going to kill George Owens.
[[Image here]]
A. He told me — okay—when the Vicksburg Police bust him — which was about May the 3rd, around that time— May 4th — he told me once he’d find out who set him up he was gonna kill him. He said it was either George Owens or either the dude they call Hindu that set him up.
[[Image here]]
Q. Eddie McCoy admitted to you that he shot at George Owens that night?
A. Yes, sir.
(Tyler Smith).
Additionally, the jury heard the following testimony from Johnnie Davis when Davis was being questioned about the rift that existed between Owens and McCoy. Again, this line of questioning and testimony drew no objection from the State:
Q. You know about Eddie McCoy threatening George Owens, don’t you?
A. No, I do not.
Q. Well you know that Eddie McCoy was busted for cocaine, don’t you?
A. Yes, I had knew that.
Q. Do you also know that Eddie McCoy was the one that said George Owens was the one that informed on him?
*415 A. He’s never mentioned that to me.
Q. You don’t know anything about the threats that—
A. (Interposing) No, I don’t.
Q. (Continuing) Eddie McCoy made on George Owens’s life?
A. No, I do not.
Furthermore, on cross examination of Aaron Hearon, Hearon was questioned about the conflicts that existed between Owens and McCoy. Hearon testified, “They had a little problem. Eddie had got busted one time.” Clyde Judge also testified that McCoy was firing his gun at George Owens at the start of the street fight. Robert Butler, the night club bartender, was asked if he knew that McCoy had threatened Owens’ life, and Willie Ward, night club patron, provided strong testimony regarding McCoy’s dislike of Owens and McCoy’s plan to shoot Owens:
He [Eddie McCoy] told Johnnie, he said, T told you to keep him [George Owens] in there while I went out to my truck and got my gun,’ and then he walked over to his truck and reached behind the seat and pulled out a gun.
(Willie Ward).
In summary, the jury heard repeated testimony regarding the rift that existed between McCoy and Owens, despite that which was erroneously excluded by the trial judge. By way of Tyler Smith, the jury heard testimony: (1) that McCoy blamed Owens for his drug arrest; (2) that McCoy made threats of killing Owens; (3) that McCoy admitted shooting at Owens. This testimony was corroborated in part by Clyde Judge and Willie Ward. Johnnie Davis and Robert Butler were also questioned about these matters, although both men denied any knowledge of these facts. Consequently, we conclude that the erroneous exclusion of testimony in this case, was, in fact, harmless. Consistent with our jurisprudence, we cannot say that the excluded testimony constituted reversible error in light of other testimony which was presented to the jury for its full substantive worth. See Malinda Wells v. State, 604 So.2d 271 (Miss.1992); Holland v. State, 587 So.2d 848, 865 (Miss.1991); Whitley v. State, 511 So.2d 929, 932 (Miss.1987); Griffin v. State, 504 So.2d 186, 190 (Miss.1987); Giles v. State, 501 So.2d 406, 408 (Miss.1987).

II. The court erred in not excluding the statements of the defendant, George Owens, presented into evidence during the course of the trial which had not been previously provided to defense counsel by the prosecution.

III. The circuit court erred in failing to grant the defendant’s motion for a directed verdict of acquittal and further by failing to grant the defendant’s motion for a new trial.

Regarding assignments II and III, we have conducted a thorough review of the record and briefs in this case, and we find that both assignments are devoid of merit and raise no issues which require discussion; therefore, under the authority of Morea v. State, 329 So.2d 527 (Miss.1976), we affirm the conviction and sentence. See Cowart v. State, 519 So.2d 896 (Miss.1988); Hill v. State, 505 So.2d 281 (Miss.1987); Holliday v. State, 504 So.2d 725 (Miss.1987); Rodriquez v. State, 498 So.2d 1230 (Miss.1986); Landingham v. State, 498 So.2d 382 (Miss.1986); Ragland v. State, 498 So.2d 373 (Miss.1986); Brewer v. State, 497 So.2d 821 (Miss.1986); Hawkins v. State, 488 So.2d 800 (Miss.1986); Burkett v. State, 484 So.2d 1046 (Miss.1986); Smith v. State, 484 So.2d 364 (Miss.1986).
CONVICTION OF MANSLAUGHTER AND SENTENCE OF EIGHTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., PRATHER, ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.

. M.R.E. 403 explains that evidence, although relevant, may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, waste of time, etc.
Under the facts of this case, there are no compelling considerations which would outweigh the probative worth regarding the reason that Owens emerged with a gun in hand.