PAYNE, J.,
for the Court:
PROCEDURAL HISTORY
¶ 1. Zenas Richburg was arrested and subsequently indicted for aggravated assault. On April 9, 1997, the jury returned a verdict of guilty. Thereafter, he was sentenced to serve a term of twenty years in the custody of the Mississippi Department of Corrections. Feeling aggrieved, Richburg appeals. Having read the arguments presented and studied the law applicable to this situation, we affirm the holding below.
FACTS
¶ 2. On the evening of January 15, 1995, inside Inez’s Lounge in Biloxi, Mississippi, James Flowers approached Arthur Grand-berry, demanding money for work he had performed on Grandberry’s yard. Grandber-ry stated to Flowers that “I paid you, so what’s the problem?” Flowers replied, “[Ajin’t no problem.” Flowers walked behind Grandberry with his hands in his pocket. Grandberry questioned Flowers asking him whether he had a weapon hidden on his person. The two argued, then Grandberry left. Richburg arrived at the lounge at the same time his brother (Grandberry) was leaving. Mike Westover, a friend óf Rich-burg, went to see what was wrong with Grandberry. Richburg walked into the lounge and picked up a pool stick. Thereafter, Richburg hit Flowers in the face with the pool stick.
ISSUES PRESENTED
I. WHETHER THE COURT ERRED IN FAILING TO GRANT THE MOTION FOR A DIRECTED VERDICT, OR THE MOTION FOR A JUDGMENT NOT WITHSTANDING THE VERDICT OR IN THE ALTERNATIVE A NEW TRIAL BECAUSE THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE, THE PROOF WAS INSUFFICIENT TO SUPPORT THE CONVICTION.
¶ 3. The appellant first asserts that the trial court erred in not granting him a motion for a direct verdict or in the alternative a JNOV. The appellant also argues that the verdict of the jury was against the overwhelming weight of the evidence, and as a result he claims a new trial is warranted.
¶ 4. Motions for a directed verdict and a motion for JNOV challenge the legal sufficiency of the evidence. Noe v. State, 616 So.2d 298, 302 (Miss.1993) (stating that a motion for directed verdict tests legal sufficiency of the evidence); McClain v. State, 625 So.2d 774, 778 (Miss.1993) (stating that a motion for judgement of acquittal notwithstanding the verdict also tests legal sufficiency of the evidence). See also Strong v. State, 600 So.2d 199, 201 (Miss.1992) (stating that the trial judge is bound by the same law whether addressing a motion for directed verdict or addressing a request for a peremptory instruction). Since both require consideration of the evidence before the court when made, the supreme court (and the court of appeals) properly reviews the ruling only on the last occasion that the challenge was made in the trial court. McClain, 625 So.2d at 778.
¶ 5. Concerning the weight of the evidence, the Mississippi Supreme Court has held that “[t]he jury is charged with the responsibility of weighing and considering the conflicting evidence and credibility of the witnesses and determining whose testimony should be believed.” McClain v. State, 625 So.2d 774, 781 (Miss.1993). Furthermore, “the challenge to the weight of the evidence via motion for a new trial implicates the trial court’s sound discretion.” Id. (citing Wetz v. State, 503 So.2d 803, 807-08 (Miss.1987)). *446 The decision to grant a new trial “rest[s] in the sound discretion of the trial court, and the motion [for a new trial based on the weight of the evidence] should not be granted except to prevent an unconscionable injustice.” Id. This Court will reverse only for abuse of discretion, and on review will accept as true all evidence favorable to the State. Id.
¶ 6. In the present case, the jury heard the witnesses and the evidence as presented by both the State and the defense. Paul Cannette, a patrolman with the Biloxi Police Department, testified that in the early morning hours of January 16, 1995, he received a dispatch to go to Inez’s Lounge. On the scene he found James Flowers lying on the steps, bleeding from his face. The flesh on Flowers face, according to Cannette, was absent below his nose, as were his front teeth. Officer Cannette followed the trail of blood to the upstairs lounge. There he found a table, a broken pool cue, and blood. Officer Cannette stated that he found no weapon in the area, such as a knife or gun.
¶ 7. Mario Gary testified that he was at Inez’s Lounge on that night and saw Flowers and Grandberry argue. He further stated that he viewed Grandberry’s brother, Rich-burg, enter the lounge. Gary testified that Richburg walked to the wall, picked up a pool cue, approached Flowers and hit him in the face with the cue three or four times. He also stated the pool cue broke with the third blow.
¶ 8. Dale Simms, the bartender at Inez’s lounge, testified that on the night in question, she confronted Flowers and asked him if he was carrying a gun. Flowers denied this and took his hands out of his jacket. After the altercation, Dale attended Flowers and saw nothing in his hands. She saw no knife or gun lying around the area.
¶ 9. A second law enforcement official placed the defendant at the crime scene. Biloxi Police Officer Earl Grimes began his investigation of Richburg after speaking to Mario Gary. Based on that and other information, the officer arrested Richburg. At that time, Richburg made a statement, which was recorded and played for the jury.
¶ 10. A neurosurgeon, Dr. Howard Smith, testified that Flower’s injuries were serious — “He was comatosed when I saw him.” Dr. Smith had a CT scan performed on Flowers. This test reflected that Flowers had a large blood clot on the left side of his head. Dr. Smith noted that unfortunately Flowers remained in a child-like state, confined to a wheelchair, with no prognosis for recovery.
¶ 11. Wade Payton testified that Flowers entered Inez’s Lounge mumbling as he usually did, walked up to Richburg, and brandished a blade in his hand. Payton told Rich-burg that Flowers had a knife. Richburg, according to Payton, hit Flowers twice with the pool cue.
¶ 12. The jury viewed and analyzed the evidence presented and decided that the appellant was guilty. After reviewing the record, we find evidence which is sufficient to allow the jury to deliberate on the issue of whether Richburg did in fact commit these acts, and we find the weight of the evidence sufficient to warrant affirming the decision that the jury made.
¶ 13. Having stated such, we find this citation of error to be without merit.
II. WHETHER THE TRIAL COURT ERRED IN REFUSING TO ALLOW RICHBURG TO INTRODUCE EVIDENCE OF SPECIFIC INSTANCES OF PRIOR CONDUCT OF THE VICTIM WHEN OFFERED TO PROVE THE IDENTITY OF THE AGGRESSOR IN A SELF DEFENSE CASE.
¶ 14. Richburg next argues that he should have been allowed to introduce evidence of specific instances of his victim’s prior conduct in order to prove that his act of self defense was needed in order to assure his safety. Because he was barred from introducing such evidence, he believes that his conviction below should be reversed. The two convictions of his victim of which he speaks are: an eighteen-year-old conviction for assaulting a police officer; and a twenty-year-old conviction for carrying a concealed weapon.
¶ 15. Richburg insists that based upon M.R.E. 405(b), he should have been allowed to bring forward Flower’s prior bad conduct. *447 He argues that the character of the victim is an “essential element” of the defense of self defense.
¶ 16. It should be noted that while the jury was not educated on Flowers’s prior convictions, the jury in this case was not without evidence regarding the character and reputation of the victim, James Flowers. The trial court was lenient in allowing such matters into evidence. For instance, Dr. Smith testified that Flowers had screened positive for cocaine prior to surgery (for the assault in question). Arthur Grandberry testified that Flowers had a bad reputation for violence in the community. Dr. James Ruff, a psychiatrist, was allowed to testify extensively in regard to prior medical notations concerning Flowers’s mental state prior to the assault. Specifically, he testified as to Flowers’s paranoid schizophrenia, the typical symptoms of this disease, possible consequences of a paranoid schizophrenic’s failure to take medication, and to hypothetical questions based on the events of the incident in question. Wade Payton testified that he knew Flowers’s reputation for violence when Flowers was intoxicated.
¶ 17. In Newsom v. State, 629 So.2d 611 (Miss.1993), the appellant was convicted of manslaughter for the killing of Eddy Ternior. At trial, the appellant was barred from the introduction of evidence by Holliman (a witness) of the victim’s prior fights with others. However, another witness, Alex Smith, testified that he knew Ternoir’s reputation for cutting people with a knife. Id. at 614. As the supreme court stated, “[T]he question before us is whether proof in the form of specific instances of violence on the part of the victim may be introduced at trial by a criminal defendant who alleges self-defense.” Id. at 613.
¶ 18. The Newsom court stated concerning the testimony of Holliman:
The trial court erred in excluding Holli-man’s testimony that he had seen Ternoir in fights before. However, we are not required to reverse a ease based solely upon the showing of an error in evidentia-ry ruling. A denial of a substantial right of the defendant must have been affected by the evidentiary ruling; in this ease, that right is the accused’s right to a fair trial. Ponthieux v. State, 532 So.2d 1239, 1248 (Miss.1988), Rule 103(a), M.R.E. Since the right to a fair trial, a constitutional right, is involved, reversal is required unless “on the whole record, the error was harmless beyond- a reasonable doubt.” Hoover v. State, 552 So.2d 834, 840 (Miss.1989). On the whole record this error by the trial judge was harmless. Ternoir’s violent character was already admitted. Alex Smith, who testified before Holliman did, had already told the jury he knew Ter-noir’s reputation for cutting people with a knife. Smith testified that on one occasion Ternoir had attempted to cut Newsom. Furthermore, Newsom testified that Ter-noir had, on another occasion, cut him beneath the eye, and on yet another occasion, Ternoir attempted to cut him with a knife.. With this evidence presented to the jury, the lack of Holliman’s testimony that Ternoir had been in fights before would not have added so much to Newsom’s case that to exclude Holliman’s testimony was reversible error.
Newsom, 629 So.2d at 614.
¶ 19. From a review of this evidence, we cannot say that the jury in the ease presented on this appeal was left in the dark as to Flowers’s character. Several witnesses testified that Flowers was less than stable, as he suffered from mental problems and tested positive for cocaine. Likewise, Arthur Grandberry testified that Flowers had a reputation for being violent while Wade Payton testified that Flowers had a reputation for violence when inebriated. Thus, much like the jury in Neivsom, the jury here was presented with an enlightened picture of Flowers and we cannot say that Riehburg was prejudiced by the exclusion of an eighteen-year-old assault charge and a twenty-year-old charge of carrying a concealed weapon, both of which were labeled misdemeanors. The trial court’s exclusion of the prior convictions could not have constituted reversible error under these facts, as the record as a whole sufficiently educates the jury on Flowers’s character. With that said, this citation of error is without merit.
*448 III. WHETHER THE TRIAL COURT ABUSED IT’S DISCRETION IN SENTENCING RICHBURG BY CONSIDERING THE POSSIBILITY OF PAROLE AS A BASIS FOR IT’S [SIC] RATIONALE IN DETERMINING THE SENTENCE AND IN DENYING DEFENDANT’S REQUEST FOR A SENTENCING HEARING.
¶ 20. It has long been the rule in Mississippi that an imposition of a sentence in a criminal proceeding is within the sole discretion of the trial judge and the appellate court will not set it aside if the sentence is within prescribed statutory limits. Bracy v. State, 396 So.2d 632, 636 (Miss.1981). However, the defendant states that if the sentence was improperly based on prejudice or information not validated, the case may be remanded for re-sentencing. Ford v. State, 437 So.2d 13, 14 (Miss.1983). As Richburg states, “[Considering the possibility of parole was an abuse of discretion....”
¶ 21. The statement to which the defendant refers, which he claims violates his right to a fair sentence, was one made by the trial judge. The circuit judge stated “[t]hat combined with the fact that this case falls under the old law, the old sentencing law wherein he will be eligible for release in five years, the Court is of the opinion that the sentence was appropriate, and your motion is overruled.”
¶ 22. We disagree with Richburg’s analysis and conclusion that he should not be re-sentenced.
¶ 23. To begin with, the trial court’s imposition of a twenty-year sentence in this case is within the limits of the applicable statute, Miss.Code Ann. § 97-3-7 (Rev.1994). Indeed the nature of the crime in this case, and the resulting injuries to the victim, evidence the brutality of the assault, demanding punishment for the conviction. In the case of Jackson v. State, 551 So.2d 132, 149 (Miss.1989), the supreme court noted:
Our law has long provided the imposition of sentence following a criminal conviction is a matter within the discretion of the Circuit Court, subject only to statutory and constitutional limitations. So long as these are not offended, we rarely interfere. Moreover, the Court is not limited to the consideration of evidence presented of record at trial when imposing sentence.
With that said, we find that the defendant’s third assignment of error contains no merit. The judge referred to something other than what is found in the record, specifically the enactment of the truth in sentencing law. Miss.Code Ann. § 47-5-138(5) (Supp.1996).[1] He stated that the defendant could be paroled in as little as five years. According to the Jackson case, this is permitted.
CONCLUSION
¶ 24. We are satisfied that the jury weighed the evidence presented. We are satisfied that the jury was given an accurate picture of Flowers’s temper. Furthermore, we are satisfied that the trial judge’s comments do not invalidate the defendant’s sentence.
¶ 25. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COST OF THIS APPEAL ARE TAXED TO HARRISON COUNTY.
BRIDGES, C.J., McMILLIN and THOMAS, P.JJ., COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, and SOUTHWICK, JJ., concur.

. For any sentence imposed after June 30, 1995, an inmate may receive an earned time allowance of four and one-half (4 1/2) days for each thirty (30) days served if the department determines that the inmate has complied with good conduct and performance requirements of the earned time allowance program. The earned time allowance under this subsection shall not exceed fifteen percent (15%) of' an inmate’s term of sentence.