# IN THE COURT OF APPEALS
## OF THE
### NO. 1999-KA-00892-COA

**TONY MCGEE**                                                     **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                            **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/19/1999 |
| TRIAL JUDGE: | HON. MIKE SMITH |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | KATHRYN N. NESTER |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: WAYNE SNUGGS |
| DISTRICT ATTORNEY: | DUNNICA O. LAMPTON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | 02/19/1999: MURDER: SENTENCED INTO THE CUSTODY OF THE MDOC FOR LIFE; DEFENDANT PAY COST AND A $10,000.00 FINE |
| DISPOSITION: | REVERSED AND REMANDED - 9/12/00 |
| MOTION FOR REHEARING FILED: | |
| CERTIORARI FILED: | 10/13/2000; denied 12/7/2000 |
| MANDATE ISSUED: | |

BEFORE KING, P.J., BRIDGES, AND MOORE, JJ.

BRIDGES, J., FOR THE COURT:

¶1. This case is on appeal from the criminal conviction of Tony McGee for the murder of Michael Smith. On October 1, 1998, the Grand Jury of Lincoln County, Mississippi returned an indictment of murder against McGee. A subsequent trial was held in the Circuit Court of Lincoln County, Mississippi, the Honorable Mike Smith presiding. On February 18, 1999, the jury returned a verdict of guilty and McGee was sentenced to serve a term of life imprisonment at the Mississippi Department of Corrections. McGee requests that this Court reverse his conviction and sentence and remand this case for a new trial. In addition, McGee asks that this Court instruct the circuit judge who presided over his trial to recuse himself from further consideration of this matter. McGee cites the following errors on the part of the trial court, which we will consider on this appeal:

**I. THE TRIAL COURT COMMITTED PLAIN ERROR IN GIVING THE STATE'S JURY INSTRUCTION S-2 CONCERNING "MALICE AFORETHOUGHT."**

**II. THE TRIAL COURT COMMITTED ERROR BY GIVING STATE'S JURY**

**INSTRUCTION S-4 AND DENYING DEFENDANT'S JURY INSTRUCTION D-15.**

**III. THE TRIAL COURT ERRED IN EXCLUDING EVIDENCE ADMISSIBLE UNDER RULE 405(b) OF THE MISSISSIPPI RULES OF EVIDENCE.**

**IV. THE TRIAL COURT ERRED WHEN IT ALLOWED IMPROPER 404(b) EVIDENCE.**

**V. THE TRIAL COURT ERRED IN PERMITTING THE STATE TO INTRODUCE INTO EVIDENCE THE PHOTOGRAPH OF DEFENDANT TAKEN WHILE HE WAS IN CUSTODY.**

**VI. THE TRIAL JUDGE ERRED IN REFUSING TO RECUSE HIMSELF AFTER INDICATING BEFORE TRIAL THAT HE HAD ALREADY DETERMINED THAT DEFENDANT DID NOT ACT IN SELF-DEFENSE.**

**VII. THE CUMULATIVE ERROR DEPRIVED DEFENDANT OF DUE PROCESS AND A FAIR TRIAL.**

¶2. We reverse and remand this case for a new trial, finding reversible error by the trial court in denying McGee's requested jury instructions regarding "malice aforethought" and self-defense. Further we find error on the part of the trial judge in refusing to recuse himself from this trial due to his comments on the record at McGee's arraignment hearing. While we do not declare reversible error on the remaining issues, we will nevertheless discuss each of these issues as to their merit in this opinion.

FACTS

¶3. On June 30, 1998, at approximately 6:00 p.m., Michael Smith and McGee engaged in an argument with one another at the Ole Brook Mini Mart in Brookhaven, Mississippi, about rumors that Smith had heard concerning statements that McGee had allegedly made about him. After this initial argument, McGee and Smith had words again later that day.

¶4. There is testimony from Samuel Leggett, a friend of Smith's, that he and Smith had been smoking marijuana and that Smith had a revolver in his possession prior to this second argument with McGee. Leggett also testified that after the first verbal altercation, McGee followed him and Smith toward Smith's home. He testified that McGee asked Smith to drop the argument and asked him not to retrieve a gun. Smith essentially replied that he would do whatever he wanted to do. The facts are not clear as to when McGee retrieved his own gun.

¶5. The second altercation took place at the same convenience store as the earlier argument that day. Smith had returned to the Mini Mart with a friend and was waiting in the parking lot while his friend went in to purchase beer. McGee, during this time, was walking down the street adjacent to the store, also with a friend. The facts are not clear as to how the two men noticed one another or how they came to begin arguing once again. No witness was able to state with certainty whether Smith or McGee was the first to approach the other. McGee asserts that he told Smith that he wished to settle this disagreement with a fair fight, that is, an "old school" fist fight.

¶6. After this point, testimony revealed that Smith had walked from the passenger side of his friend's vehicle

to the driver's side and appeared to be leaning inside of the car window. The facts are not clear as to Smith's purpose for this action. A witness, Mr. Willie Humphrey, however, testified that he believed Smith to be reaching for a gun. Humphrey stated that he was not sure of this, but that he saw what appeared to be the handle of a pistol. Police testimony later confirmed that there was, in fact, a revolver in between the car door and the seat, approximately the same area within Smith's reach at the few moments before gunshots were fired by McGee. McGee asserts that he believed that Smith was reaching for a gun and therefore began firing his revolver at Smith in self-defense. At least two of the bullets from McGee's gun struck Smith in his back, one of these piercing Smith's lung and heart, killing him. Mr. Willie Humphrey testified that, after Smith had been shot, he saw Smith fall against the car door and saw something drop from his hand.

¶7. Immediately after he fired his gun, McGee walked across the street, away from the body, put the revolver on the ground by his feet and waited there for the police to arrive. When the police arrived on the scene, McGee did not resist arrest or attempt to hide his gun. He told the police that he shot Smith because "he was going to shoot me." McGee's only defense throughout the entire trial was self-defense. McGee asserts that he truly believed that Smith intended to shoot him and therefore, took these drastic measures to protect himself.

## LEGAL ANALYSIS

### I. THE TRIAL COURT COMMITTED PLAIN ERROR IN GIVING THE STATE'S JURY INSTRUCTION S-2 CONCERNING "MALICE AFORETHOUGHT."

¶8. This first issue brought forth by McGee is whether the trial court erred in wrongly instructing the jury on the definition and explanation of the term "malice aforethought." The jury instructions given at trial on this term are as follows:

> The Court instructs the Jury that 'malice aforethought' as charged in the indictment in this case and as referred to in other instructions of the Court is a state of mind and does not have to exist in the mind of the defendant, Tony McGee, for any given length of time, and if the defendant at the very moment of the fatal shot did so with the deliberate design to take the life of the deceased, and not in necessary self defense, real or apparent, then it was malice aforethought, and that was truly murder, as if the deliberate design had existed in the mind of the defendant for minutes, hours, days, or weeks, or even years.

¶9. A party has the right to have his theory of the case presented to the jury by instructions, provided that there is credible evidence that supports that theory. *Alley v. Praschak Mach. Co.*, 366 So. 2d 661, 665 (Miss. 1979). The lower court enjoys considerable discretion regarding the form and substance of jury instructions. *Rester v. Lott*, 566 So. 2d 1266, 1269 (Miss. 1990). The principal concern is that the jury was fairly instructed and that it understood each party's theory of the case. *Id.* A jury instruction may be improper if it incorrectly states the law, is without foundation in the evidence, or is stated elsewhere in the instructions. *Murphy v. State*, 566 So. 2d 1201, 1206 (Miss. 1990).

¶10. Here, we have a question as to whether the instruction on malice aforethought was given properly and in such a way that the jury fully understood the meaning. McGee contends that the definition of malice aforethought given in the jury instructions in his case was not an accurate definition, thereby leaving the jury to find no other verdict but to convict him. We will briefly discuss the term "malice aforethought" and our reasons for finding error on this ground.

¶11. "'Malice aforethought,' 'premeditated design,' and 'deliberate design' all mean the same thing for purposes of the offense of murder." *Tran v. State*, 681 So. 2d 514 (Miss. 1996). Furthermore, malice aforethought or deliberate design is the single most important element in the crime of murder. *Pendergraft v. State*, 213 So. 2d 560 (Miss. 1968). Here, it is questionable that deliberate design was present at the time that McGee shot Smith. The instruction given by the State concerning malice aforethought or deliberate design is attacked by McGee, using the case of *Windham v. State*, 520 So. 2d 123 (Miss. 1987). At the trial of the *Windham* case, the jury was instructed that deliberate design does not have to exist in the mind of the slayer for any certain amount of time, and that it may be formed at the very moment or second of the act. *Id.* at 125. This is exactly the type of instruction that we encounter here. The Mississippi Supreme Court examined this type of instruction and found that

> [w]hile it is no doubt true that a deliberate design to kill a person may be formed very quickly, and perhaps only moments before the act of consummating the intent, it is a contradiction in terms to state that a 'deliberate design' can be formed at the very moment of the fatal act.

*Id*. at 126. The *Windham* court further found that a deliberate design is defined as a "full awareness of what one is doing; it generally implies careful and unhurried consideration of the consequences along with calculation, planning and contemplation." *Id.* It is not accurate to state to the jury that malice aforethought or deliberate design can be formed at the immediate second of the fatal act because this is not in line with the concept of contemplation or conjecture. *Id.*

¶12. We cannot say that the instruction given to the jury in this case regarding malice aforethought was proper. Finding the above instruction appropriate for informing the jury as to malice aforethought would be to ignore the applicable case law. To decide whether McGee acted with deliberate design based on the facts of this case is not our place. Rather, our task is to review this case to determine whether the jury was accurately informed of the concept of malice aforethought. Without this proper communication, the jury cannot make the informed decision necessary to insure McGee a fair trial. We therefore rule that this issue be remanded to the trial court in accordance with the proper instruction on malice aforethought and deliberate design. According to the *Tran* case, this proper instruction would include disclosure to the jury that "deliberate design means intent to kill without authority of law and not being legally justifiable, legally excusable or under circumstances that would reduce the act to a lesser crime [than murder]." *Tran*, 681 So. 2d at 516. As the instruction was written at trial, the State would have the jury believe that deliberate design could not be formed in the heat of passion, such as in a manslaughter case, or in a case of self-defense where a defendant would assert and prove that he took a person's life because of an imminent fear for his own life. *Windham*, 520 So. 2d at 127.

¶13. Additionally, we will take note of the State's contention that McGee is procedurally barred from arguing that the malice aforethought instruction was condemned by *Windham* due to defense counsel's failure to object to the instruction at trial. On this issue, we look to *Duvall v. State*, 634 So. 2d 524 (Miss. 1994), a case cited by both parties in this case. Even where there is no contemporaneous objection by defense counsel, this denounced instruction on malice aforethought disables the defendant and prohibits a fair and objective decision by the jury. *Id.* at 526. The State continues its argument by stating in its brief that this error was not prejudicial to McGee due to the overwhelming weight of the evidence against him. We cannot clearly say that McGee was completely lacking of any evidence that would indicate some other verdict by the jury were it not for this erroneous instruction. It is our opinion that this error was prejudicial because, as mentioned above in *Windham*, it would prevent the jury from understanding that any verdict on

a lesser offense could be appropriate. *Windham*, 520 So. 2d at 127.

¶14. For the foregoing reasons, we find that the trial court erred in giving this malice aforethought instruction.

## II. THE TRIAL COURT COMMITTED ERROR BY GIVING STATE'S JURY INSTRUCTION S-4 AND DENYING DEFENDANT'S JURY INSTRUCTION D-15.

¶15. The following instruction was submitted to the jury by the State in this case regarding the defense of self-defense:

> The Court instructs the Jury that to make a killing justifiable on the grounds of self defense, the danger to the defendant must be either actual, present and urgent, or the defendant must have reasonable grounds to apprehend a design on the part of Michael Smith to kill him or to do him some great bodily harm, and in addition to this, he must have reasonable grounds to apprehend that there is imminent danger of such design being accomplished. It is for the jury to determine the reasonableness of the ground upon which the defendant acts.

¶16. McGee submitted a jury instruction of his own regarding the law on self-defense which was refused by the trial court. This instruction would have instructed the jury as to which party bore the burden of proof as to the defense of self-defense. This refused instruction reads as follows:

> The Court instructs the Jury that Tony McGee is not required to prove that he acted in self-defense, but need only raise a reasonable doubt of his guilt of the charge of murder. Further, the State is required to prove beyond a reasonable doubt that Tony McGee did not act in self-defense before a guilty verdict may be returned. Therefore, if reasonable doubt of Tony McGee's guilt arises from the evidence, including evidence of self-defense, your verdict shall be not guilty.

¶17. As to the denial of McGee's instruction and the submission of the State's instruction instead, we find reversible error. McGee points out, and we recognize, the case of *Pierce v. State*, 289 So. 2d 901 (Miss. 1974). In that case, a reversal was found to be proper where the trial judge refused a jury instruction disclosing that the burden of proof to prove self-defense is not, in fact, on the defendant. *Id.* Rather, the burden of proof in such cases lies with the State to prove that the defendant did not act in self-defense. *Id.* Neither McGee nor this Court disputes that the State submitted a proper definition of self-defense in its instruction to the jury. However, as the case law points out, this proper definition should be coupled with a communication to the jury of which party has the burden of proof in such a showing of self-defense.

¶18. The State has argued to this Court, in essence, that it does not agree with the holding of *Pierce*, but in our opinion, has failed to give this Court any reason to find that the self-defense instruction was not erroneous. The State simply cites case law which tells us that where the jury is given instructions which, taken as a whole, accurately charge the jury with the applicable law in that particular case, no error should be found. *Christmas v. State*, 700 So. 2d 262 (Miss. 1997). However, we cannot say that the instructions given to the jury in this case on the matter of self-defense, taken as a whole, gave the jury adequate information as to their duties in arriving at a verdict. The State argues that the trial court correctly denied McGee's jury instruction on self-defense because it was redundant of the State's instructions. We do not agree. It is clear, simply from reading the instructions submitted by the State and the instructions submitted by McGee, that the State's instruction contains no language, either express or implied, regarding the fact

that the burden of proof belonged to the State to prove lack of self-defense. The State brings to our attention a further instruction given by the court to the jury on self-defense:

> The Court instructs the Jury that you are not to judge the actions of [McGee] in the cool, calm light of after developed fact, but instead you are to judge his actions in the light of the circumstances reasonably appeared to him on that occasion; and if you believe that under those circumstances it reasonably appeared to [Appellant] that he then and there had reasonable grounds to apprehend a design on the part of Michael Smith to kill him or to do him some great personal injury, and that there reasonably appeared to [Appellant] to be imminent danger of such designs being accomplished, then [Appellant] was justified in anticipating an attack by Michael Smith; and further, if you believe from the evidence that Michael Smith died as the result of the discharge of a pistol which was, at the time of the fatal shot, in the possession of [McGee] **but that the fatal shot fired at a time when [McGee] was lawfully acting in his own defense, you must find [McGee] not guilty**. (Emphasis by the State).

We fail to see where the mention of the burdens of proof are located or could be inferred in this or the prior instruction submitted by the State. In our opinion, these instructions would be proper but for the absence of the burden of proof on the State. Both the definition of self-defense and the assertion that the jury must acquit if the defendant is found to have acted in self-defense in accordance with this definition are present in the State's submitted instructions. However, the instructions do not satisfy the necessity of informing the jury that McGee does not have the burden of proof to prove that he acted in self-defense as set out in the *Pierce* decision. We cannot say that this error is harmless and would fail to change the outcome of this case since the jury was not informed that they should not look to McGee to prove self-defense, but should rather look to the State to prove the lack thereof.

### III. THE TRIAL COURT ERRED IN EXCLUDING EVIDENCE ADMISSIBLE UNDER RULE 405(b) OF THE MISSISSIPPI RULES OF EVIDENCE.

¶19. The evidence relevant to this issue is that of an argument between Smith and a third person earlier on the day of Smith's death. McGee asserts that he, in fact, put a stop to this argument between these two men. McGee therefore argues that this evidence should not have been excluded as it goes both to prove his peaceful nature, as well as Smith's violent nature. This issue is without merit.

¶20. In resolving this issue, we look to the language of the Mississippi Rules of Evidence. A criminal defendant may inquire into the victim's character at trial in order to prove that the victim was the initial aggressor. M.R.E. 404(a)(2). Under this rule, acts of specific conduct are only permissible on cross-examination. *Id.* Character evidence is only proper if it is given in the form of opinion or reputation. M.R.E 405(a). However, M.R.E. 405(b) sets out that specific instances of conduct may be used both on direct and cross-examination when the pertinent trait of character being examined is "an essential element of a charge, claim, or defense." M.R.E. 405(b).

¶21. The State points out that each of the cases used by McGee to support his position on this issue are cases involving physical altercations or physical altercations coupled with verbal arguments. *Newsom v. State*, 629 So. 2d 611, 613-14 (Miss. 1993); *Green v. State*, 614 So. 2d 926 (Miss. 1992); *Heidel v. State*, 587 So. 2d 835 (Miss. 1991); *Richburg v. State*, 724 So. 2d 444 (Miss. Ct. App. 1998). While in each of these cases, the court found that there was error in not admitting evidence of prior violent acts, we note that these prior acts included some form of physical altercation relevant to the issue of violent

character. In this case, however, McGee submits evidence of a verbal argument between Smith and a third party with no accompanying physical fighting. Therefore, McGee's case law is distinguishable from the case at bar. McGee cites nothing to this Court proposing that a verbal argument, taken alone, would prove Smith's violent nature.

¶22. Further, we disagree that this evidence would be essential to show the peaceful nature of McGee as he would suggest. Again, no supporting case law has been submitted by McGee that would indicate to this Court that a defendant coming in between the verbal argument of two other parties would tend to show the peaceful nature of the defendant in a murder trial. Therefore, we can find nothing to support the allegation that the exclusion of this evidence was prejudicial to McGee. *Owens v. State*, 609 So. 2d 410, 415 (Miss. 1992).

### IV. THE TRIAL COURT ERRED WHEN IT ALLOWED IMPROPER 404(b) EVIDENCE.

¶23. The evidence referred to by McGee in this issue was the testimony of Bertha Tanner. Ms. Tanner testified in front of the jury that she had been in an argument with McGee about four hours before McGee shot Smith. She further testified that the cause of this argument was that McGee had "jumped on" her nephew earlier that day. Immediately following Ms. Tanner's statement, counsel for McGee objected, citing an M.R.E. 404(b) violation and asked that the jury be instructed not to consider this testimony. McGee argues that this testimony was prejudicial to him and therefore requires reversal.

¶24. According to the record, the only words that came out of Ms. Tanner's mouth before defense counsel's objection were "[b]ecause he jumped on my nephew." Any further testimony that was elicited regarding this argument between Ms. Tanner and McGee took place outside the presence of the jury. This phrase, which gives no meaning to the words "jumped on," did not prejudice McGee here. It would be speculation to say that the jury took these words to mean a physical altercation rather than simply a heated argument. Furthermore, McGee offers this Court no supporting evidence to show that this statement would be prejudicial to him.

¶25. Moreover, as to the statement regarding McGee's "jumping on" Ms. Tanner's nephew, there is nothing in the record to indicate that the trial judge explicitly refused to instruct the jury to disregard this part of the testimony as McGee alleges.

### V. THE TRIAL COURT ERRED IN PERMITTING THE STATE TO INTRODUCE INTO EVIDENCE THE PHOTOGRAPH OF DEFENDANT TAKEN WHILE HE WAS IN CUSTODY.

¶26. The photograph at issue here is the photograph taken of McGee immediately after he was in police custody following the shooting of Smith. McGee claims that the admission of the photograph was prejudicial to him. The State argues that the purpose of this evidence was primarily to show what McGee was wearing for purposes of identity and that McGee suffered no injuries in the altercation with Smith.

¶27. The case of *Sloane v. State*, 437 So. 2d 16 (Miss. 1983), provides a three-prong test of admissibility for using mug-shot photographs taken of the defendant for evidence at trial. These are: 1) the government must have a demonstrable need to introduce the photographs; 2) the photographs, if shown to the jury, must not imply that the defendant had a prior criminal record; and 3) the manner of introduction at trial must

be such that it does not draw particular attention to the source or implications of the photographs. *Id.* at 18.

¶28. Using the three-prong test adopted by *Sloane*, the photograph in this case was permissible. *Id.* We will discuss the first and second prongs of this test together, as the case law pertains to both. The State's demonstrable need was to show McGee's attire at the time of the shooting for purposes of identity and to show that McGee had no injuries, in conjunction with the State's theory that Smith did not provoke McGee. The basis for prohibiting the use of photographs or "mug shots"of defendants at trial is to prevent the introduction of evidence that would tend to indicate to the jury that previous crimes have been committed by that defendant. *Hewlett v. State*, 607 So. 2d 1097, 1103 (Miss. 1992); *Cabello v. State*, 471 So. 2d 332, 347 (Miss. 1985). In *Hewlett*, the defendant's identity was not at issue, as in our case at bar. *Hewlett*, 607 So. 2d at 1102. However, the court recognized that the picture the State attempted to admit was taken at the police station immediately after the defendant was taken into custody for the same crime as was at issue in that trial. *Id.* The court determined that this photograph did not implicate any prior crimes of the defendant, the basis for which the rule was established, and therefore the photograph did not affect any of the defendant's substantial rights. *Id.* at 1103.

¶29. Applying this law to the case at bar, there is no question that the photograph used by the State was taken while McGee was in custody for the same crime that was the subject of this trial. Therefore, we cannot say that this photograph prejudiced McGee in the eyes of the jury based on the findings in *Hewlett*.

¶30. As to the third prong of *Sloane*, we reiterate that there were no implications as to prior crimes committed by McGee; therefore, the photograph draws attention only to the applicable issue on which the jury was to decide in this case, that is, the demise of Smith. We find no error by the trial court in allowing the photograph into evidence.

### VI. THE TRIAL JUDGE ERRED IN REFUSING TO RECUSE HIMSELF AFTER INDICATING BEFORE TRIAL THAT HE HAD ALREADY DETERMINED THAT DEFENDANT DID NOT ACT IN SELF-DEFENSE.

¶31. This issue involves the following statements made by the trial judge at the arraignment of McGee:

BY THE COURT: I tell you, he shot this fellow. Before he shot him he said, I don't mind-the guy wanted to play fair. He took off his rings and his watch and wanted to play fair. And this one said, I don't mind a murder wrap and shot him in the arm and then he shot him two times in the back. So, along about the middle of November, at some date to be set by the court administrator, at a later time, we'll have a bond hearing.

BY MR. MILNER: Your Honor, is the Court stating that that is the Court's position as to what this man said as a matter of fact?

BY THE COURT: This is what has been reported to me. To shoot somebody two times in the back is not self-defense.

BY MR. MILNER: I understand that, Your Honor, but -

BY THE COURT: And I don't want to get into it with you this morning. We'll set a bond hearing and then you come and present your case.

BY MR. MILNER: I appreciate that, Your Honor. I'm just trying to drink in what the Court has just stated to me. I'm-is that-is that the Court's position that that's what he said is a matter of fact? I mean, have you already found that to be the case?

BY THE COURT: That is what has been reported to me by someone who witnessed it.

BY MR. MILNER: Okay.

BY THE COURT: Not reported directly to me, but reported to the investigators-

BY MR. MILNER: So we will-

BY THE COURT: -which I feel is very reliable.

¶32. After these statements were made by the trial judge, McGee filed a motion to recuse Judge Smith. This motion was denied. The case of *Collins v. Dixie Transport, Inc.*, 543 So. 2d 160 (Miss. 1989), provides that a judge who is otherwise qualified to preside over a trial must be free of disposition and sufficiently neutral to be capable of rendering a fair decision. "If a reasonable person, knowing all the circumstances, would harbor doubts about a judge's impartiality, he is required to recuse himself." *Garrison v. State*, 726 So. 2d 1144, 1152 (Miss. 1998). This is the only way to overcome the presumption that the trial judge acted in a fair and unbiased manner at trial. *Id.* The standard here is that we must review the entirety of McGee's trial and reverse only in the event of a manifest abuse of discretion. *Id.* In this regard, it is our opinion that Judge Smith clearly went forward in presiding over this trial having already pre-judged and predetermined that McGee did not act in self-defense based on the comments made by him on the record of McGee's arraignment. At this point, before the trial had begun, Judge Smith had not yet heard either party's fully developed argument as to the issue of self-defense. Therefore, he could not have given an impartial opinion as to whether the burden of the State had been met to prove the lack of self-defense in this case.

¶33. Here, we cannot say with certainty that a reasonable person would not have doubts about Judge Smith's comments regarding McGee's guilt. According to Canon 3 of the Code of Judicial Conduct,

> (4) A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider ex parte or other communications concerning a pending or impending proceeding. A judge, however, may obtain the advice of a disinterested expert on the law applicable to a proceeding before him if he gives notice to the parties of the person consulted and the substance of the advice, and affords the parties reasonable opportunity to respond.

Mississippi Code of Judicial Conduct Canon 3 (1995).

Further, the Code speaks to cases in which a judge should disqualify or recuse himself from a particular case:

> C. Disqualification

> (1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . .

Mississippi Code of Judicial Conduct Canon 3 (1995).

¶34. We are not convinced by the State that these comments during McGee's arraignment were in the course of discussions off-the-record. The record simply indicates that prior to these comments by Judge Smith there was some discussion off-the-record. The comments following the off-the-record talks were recorded by the court reporter. This is apparent from McGee's submitted trial record excerpts because the comments made regarding McGee's claim of self-defense were simultaneous with an on-record discussion of a bond hearing setting for McGee. Further, immediately after these comments, there is the phrase "(This concluded the hearing in this matter.)." This is a clear indication that the discussion in between this phrase and the previous phrase "(Discussion off the record.)" was on the record, contrary to the State's claim that it was not.

¶35. In these comments, Judge Smith disclosed to all present at McGee's arraignment that he had, in fact, engaged in ex parte communications with investigators in this case. Judge Smith went on to say that he considered these investigators reliable. We are also not convinced that, as the State asserts, Judge Smith said these words in the course of small talk, humor or in passing, but rather, he made them in a formal court proceeding. While the State argues that all of McGee's objections were taken into account in the interest of a fair decision and that Judge Smith's comments were not in the presence of a jury, we cannot help but hold the opinion that his comments regarding McGee's defense of self-defense are suspiciously tied to his denial of McGee's jury instruction on self-defense, which we have previously declared as error. This Court does not purport to make any accusations of purposeful misconduct on the part of Judge Smith, nor is it our job to find that these comments were, in fact, improper. Rather, our task is to look at this situation in the same light as would a reasonable person, which is our standard here. We cannot say that a reasonable person would not harbor doubts about Judge Smith's apparent predisposition in this case.

¶36. The fact that Judge Smith's comments were made outside the presence of a jury and before trial had ever begun is not at issue here. Whether Judge Smith or the jury be the trier of fact, these comments containing opinions relied on by unpermitted ex parte communications are still, in our opinion, crossing the line toward partiality. While the jury may be the trier of fact, who will ultimately decide which party submitted the most credible evidence, Judge Smith still remained in a position to rule on objections, motions and instructions to be submitted to the jury. These important functions take place in every courtroom and are part of trial. As such, a trial judge must be completely impartial in ruling on these various items just as a jury should be completely impartial when hearing the evidence and weighing that evidence to arrive at their verdict. *Mississippi Commission on Judicial Performance v. Spencer*, 725 So. 2d 171, 177 (Miss. 1998).

¶37. Having reviewed McGee's trial in its entirety and taking all relevant factors into account, we hold that Judge Smith should have recused himself from McGee's trial. Accordingly, McGee's conviction and sentence is reversed and remanded to the trial court with instructions that Circuit Judge Mike Smith be disqualified from further consideration of this matter.

### VII. THE CUMULATIVE ERROR DEPRIVED DEFENDANT OF DUE PROCESS AND A FAIR TRIAL.

¶38. Having found reversible errors regarding the improper malice aforethought instruction, the refusal of McGee's jury instruction containing the proper burdens of proof for a showing of self-defense and the refusal of the trial judge to recuse himself despite his partiality as to McGee's guilt, we find that McGee was denied a fair trial. Taking all of these errors together, we reverse McGee's conviction and sentence and remand these issues to the trial court for proceedings consistent with this opinion.

¶39. **THE JUDGMENT OF THE CIRCUIT COURT OF LINCOLN COUNTY IS REVERSED AND THE CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS OF THIS APPEAL ARE ASSESSED TO LINCOLN COUNTY.**

**KING, P.J., IRVING, LEE, AND PAYNE, JJ., CONCUR. McMILLIN, C.J., AND MYERS, J., CONCUR IN RESULT ONLY. MOORE, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY SOUTHWICK, P.J. THOMAS, J., NOT PARTICIPATING.**

MOORE, J., CONCURRING:

¶40. I concur in the majority opinion. The purpose of my separate opinion is to elucidate why I agree that reversal and remand is required in this case, and why I believe that it is appropriate to address the erroneous malice aforethought jury instruction in light of McGee's failure to object at trial.

¶41. The majority cites *Windham v. State*, 520 So. 2d 123, 126 (Miss. 1987), in which the court found that it was contradictory to say that deliberate design could be formed at the moment of the fatal act. The court further noted that it is possible for deliberate design to exist where the killing is no greater than manslaughter. Thus, the *Windham* court found that the definition of malice aforethought in the murder instruction was "in hopeless conflict with the manslaughter instruction." *Id.*

¶42. I am writing separately to address the State's argument that the giving of S-2 in the case *sub judice* was harmless error because the facts of the case did not support the giving of a manslaughter instruction. In *Catchings v. State,* 684 So. 2d 591 (Miss. 1996), the court acknowledged that: "Where deliberate design and manslaughter instructions are given, and 'where under the evidence the jury might reasonably have concluded that the defendant acted in the heat of passion, we will . . . ordinarily reverse.'" *Id.* at 595 (quoting *Blanks v. State*, 542 So. 2d 222, 227 (Miss. 1989)). Under the particular facts of *Catchings,* the court concluded that it was harmless error to give an instruction stating that deliberate design could be formed at the moment of the fatal act because the jury could not have reasonably found that the defendant acted in the heat of passion. Thus, although the trial court gave a manslaughter instruction in *Catchings,* along with the deliberate design instruction which *Windham* rejected, the court did not reverse.

¶43. In the case *sub judice*, the State obviously felt that there were sufficient facts to warrant a manslaughter instruction because the State insisted that the trial court give a manslaughter instruction. The trial court also thought a manslaughter instruction was warranted since it gave the manslaughter instruction. The record contains facts which support a manslaughter instruction. It is disingenuous for the State to insist upon a manslaughter instruction at trial and now insist that the facts of the case do not support a manslaughter instruction.

¶44. McGee did not object to the instruction containing the malice aforethought definition, but he did object to the giving of a manslaughter instruction. Since McGee was stuck with a manslaughter instruction which he

did not desire, he was at least entitled to an instruction which would explain that deliberate design, or malice aforethought, could also exist if the killing was manslaughter. As we recently held in *Brown v. State*, 1999-KA-00058 (Miss. Ct. App. Dec. 7, 1999):

> The defect in an instruction that says guilt of murder exists if "the deliberate design to kill exists but for an instant," is that it does not tell the jury that "the deliberate design to kill might exist and the killing be manslaughter." *Pittman v. State*, 297 So. 2d 888, 893 (Miss. 1974). The cure for this defect was to qualify that instruction by whatever the facts of the case present as justification or excuse. Id. The error is not in giving a deliberate design instruction, therefore, but in giving an incomplete one if manslaughter or other relevant issue is adequately raised by the evidence.

*Id.* at (¶16). Since I believe that the facts of this case are governed by *Windham* and not by *Catchings* as urged by the State, I concur in the majority's finding of error and agree that reversal and remand is necessary.

¶45. The other reason for my writing separately is that I wish to clarify that this opinion does not deviate from the general proposition that failure to object to erroneous jury instructions constitutes waiver of the issue on appeal. *Oates v. State*, 421 So. 2d 1025, 1030 (Miss. 1982). We reach the issue in the case *sub judice* for very limited and specific reasons. In *Duvall v. State*, 634 So. 2d 524 (Miss. 1994), the supreme court held that, despite the defense attorney's failure to object to an erroneous deliberate design instruction:

> There is no reason for the prosecuting attorney and the circuit judge to be unaware of the clear holding in Windham, and S-2 should never have been offered by the State or granted by the circuit judge. . . . Where, however, the State offers and the circuit judge grants an instruction which we have clearly held is erroneous, we are not going to hold defense counsel to the same degree of diligence he has on instructions this Court has not ruled upon.

*Id.* at 525-26.

¶46. The supreme court reiterated this rule in *Fears v. State*, 97-CT-00558-SCT (Miss. June 29, 2000), but did not apply it because the wording of the particular instruction was not the same as that rejected by *Windham*. The instruction involved in *Fears* stated that "premeditated design could be formed an instant *before* the fatal act" as opposed to "at the moment" of the fatal act. The *Fears* court held that under these circumstances: "Windham does not constitute clear notice to a trial judge or prosecutor that the instruction at issue in this case was clearly erroneous." *Id.* Thus, the *Fears* court applied the procedural bar because defense counsel failed to object and "there is no reason not to hold defense counsel to the same degree of diligence to which this Court has repeatedly held that it will be held." *Id.* Since the instruction involved in the case *sub judice* contained the "at the moment" language rejected in *Windham*, ample notice had been given that the instruction was clearly erroneous. Thus, under these limited circumstances, the procedural bar enunciated in *Oates* does not apply.

¶47. Having expressed my concern that the opinion in the case *sub judice* should not be viewed as *carte blanche* to raise as error the giving of jury instructions to which the defense counsel failed to object at trial, I hereby concur that the trial court committed reversible error. Having agreed in reversal and remand on this issue, I shall not address the other issues assigned as error.

**SOUTHWICK, P.J., JOINS THIS SEPARATE WRITTEN OPINION.**